LIPEZ, Circuit Judge,
dissenting.
I agree with some of the majority’s description of the role that the advisory guidelines should play in the determination of post-Booker sentences, and its rejection of the reasoning of Judge Howard’s concurring opinion. The guidelines remain an important consideration in sentencing. The guidelines should not be presumptively controlling, and a guidelines sentence should not be deemed per se reasonable. The guidelines are generalizations that can be unreasonable in particular cases.
But the district court’s approach to the guidelines in this case was inconsistent with these principles. I do not say this to be critical of the district court. It was operating in an uncertain environment. Its discussion of the guidelines was careful and thoughtful. However, this statement of the district court, quoted by the majority, is the problem:
I am certainly treating the guidelines as advisory, not mandatory, but I feel I need to start someplace and that’s where I am going to start. I do intend to give them substantial weight, but they don’t have controlling weight; and if there are clearly identified and persuasive reasons why I should not impose a guidelines sentence, I will consider those and impose a sentence accordingly.
The majority characterizes this paragraph as “adroit” and a “useful compass.” I disagree. There is a significant difference between treating the guidelines as important and giving them substantial weight. There is scant difference between treating a guidelines sentence as presumptively controlling and stating that the court will depart from that sentence only for “clearly identified and persuasive reasons.”[5] Here, the judge gave the guidelines a *525 weight and a centrality that uncomfortably approximate the mandatory guidelines system that the Supreme Court found unconstitutional in Booker. To steer a sensible course between the Supreme Court’s rejection on constitutional grounds of mandatory guidelines and Congress’s continuing reliance on the guidelines to achieve uniformity in sentencing, I think that a different approach to sentencing post -Booker is required.
I.
There is useful guidance for this approach in the Sentencing Reform Act (“SRA”) itself, and particularly 18 U.S.C. § 3553, which describes the procedures that courts must follow in sentencing. Although that statute now identifies the guidelines sentencing range as only one of the sentencing factors to consider,[6] I believe that the district court should first calculate the guidelines sentence range (“GSR”), including any departures, as it did pr e-Booker.[7] See 18 U.S.C. § 3553(a)(4)(A) (“The court, in determining the particular sentence to be imposed, shall consider ... the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.... ”). This first step is sensible. The guidelines are the only sentencing factor that yield a measure of time. That fact alone establishes their continuing importance. Hence, I find meaningless the debate over whether the guidelines post -Booker are more important than the other sentencing factors in section 3553(a) or whether they are simply as important and no more. That comparison involves incommensurable factors because the guidelines suggest a temporal outcome whose appropriateness must then be assessed in light of the case-specific factors identified in section 3553(a). Indeed, with their focus on the bottom line, the prosecution and defense counsel will inevitably address their arguments to the appropriateness or inappropriateness of a guidelines sentence.
The statute then tells the district court how it must evaluate these arguments. The court should determine whether a sentence within the GSR is “sufficient, but not greater than necessary,[8] to comply with *526 the purposes set forth in [section 3553(a)(2) ],”[9] based on the “nature and circumstances of the offense and the history and characteristics of the defendant,” “any pertinent policy statement ... issued by the Sentencing Commission,” “the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,” and “the need to provide restitution to any victims of the offense.” 18 U.S.C. § 3553(a). Importantly, there is no assumption here that a guidelines sentence complies with the purposes of the sentencing statute. Instead, that compliance must be tested by consideration of the multiple factors set forth in the sentencing statute, with particular attention to the factors identified by the parties in their arguments.
If, after conducting this multi-factor analysis, the court concludes that a sentence within the GSR does not comply with the purposes set forth in section 3553(a)(2), the court should impose a non-guidelines sentence. See Booker, 543 U.S. at 245-46, 125 S.Ct. 738 (stating that the SRA, as amended by Booker, “requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)(Supp.2004)”). To be sure, because a court begins its analysis with a calculation of the guidelines sentence, a court that chooses a non-guidelines sentence will have the burden of explaining its choice. But this explanatory burden is not a function of the special weight or status of the guidelines. It is a function of the sentencing statute itself, which requires that any sentence that the court imposes, within or without the guidelines, comply with the purposes set forth in the statute.
Before Booker, the mandatory guidelines overwhelmed the other sentencing factors set forth in section 3553. There was scant need to look beyond the guidelines system (including its departure standards) to justify a sentence. That is no longer true. All of the sentencing factors in section 3553 are now fully in play. As a matter of statutory construction, there is nothing in the language of section 3553(a) that justifies attributing to the guidelines “substantial weight” in the sentencing decision.
There are some who contend that the advisory guidelines largely account for all of the relevant sentencing factors. See, e.g., Shelton, 400 F.3d at 1332 n. 9 (“The factors the Sentencing Commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to *527 consider under Booker and § 3553(a).”); see also Prepared Testimony of Judge Ricardo H. Hinojosa, Chair, United States Sentencing Commission Before the Subcommittee on Crime, Terrorism, and Homeland Security, Committee on the Judiciary, United States House of Representatives (Feb. 10, 2005), available at http://www.ussc.gov/Blakely/bookertesti-mony.pdf (last visited Feb. 25, 2006) (same). That being so, the argument goes, there must still be primary reliance on the guidelines in sentencing.
This argument is too facile. As the majority points out, the guidelines are inescapably generalizations. They say little about “the history and characteristics of the defendant.” Indeed, the guidelines prohibit consideration of certain individualized factors, namely, lack of guidance as a youth and similar circumstances; drug or alcohol dependence or abuse and gambling addiction; personal financial difficulties and economic pressures upon a trade or business; post-sentencing rehabilitative efforts; diminished capacity where the offense involved violence or serious threat of violence, or where diminished capacity was caused by voluntary use of drugs or other intoxicants; and aberrant behavior involving, among other things, a serious drug trafficking offense. U.S.S.G. §§ 5K2.0(d)(1), 5K2.13, 5K2.20(c). The guidelines also discourage — except in “exceptional cases”- — consideration of other individualized factors, including: age, § 5H1.1; education and vocational skills, § 5H1.2; mental and emotional conditions, § 5H1.3; physical condition, § 5H1.4; employment record, § 5H1.5; family ties and responsibilities, § 5H1.6; and civil and military contributions, § 5H1.11. These prohibited and discouraged factors are in tension with the holistic, personalized view of the defendant required by section 3553(a)’s other factors. See, e.g., Stephen G. Kalar et al., A Booker Advisory: Into the Breyer Patch, 29 Champion 8, 15 (2005) (stating that “prohibited or discouraged departures” are “tailor-made for the broader equitable analysis under § 3553(a)”); see also Foreman, 436 F.3d at 644 (“A sentence within the Guidelines carries with it no implication that the district court considered the 3553(a) factors if it is not clear from the record, because, of course, under the Guidelines as mandatory, a district court was not required to consider the section 3553(a) factors.”).
The very mention of these prohibited and discouraged factors dismays some critics of sentencing who see in them the potential for unseemly consideration of a defendant’s plight and a return to the sentencing abuses and disparities that inspired the guidelines. That potential is surely there. We must be concerned about it. But it is also true that the old system operated in the complete absence of guidelines. We now have an advisory guidelines system whose consequences are unforeseeable. Despite the dire predictions of some, there is also the possibility that this new system will permit the individualized sentencing absent under the mandatory guidelines system without repeating the disparities so troubling to Congress. As the remedial majority in Booker states, the “features of the remaining system, while not the system Congress enacted, nonetheless continue to move sentencing in Congress’s preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.” 543 U.S. at 264-65, 125 S.Ct. 738. Section 3553(a)’s other factors are not necessarily antithetical to Congress’s “preferred direction,” and may be part and parcel of it — “maintaining flexibility sufficient to individualize sentences where necessary.” Id.
II.
I have focused on the procedural role of the advisory guidelines post-Booker be *528 cause I believe that focus captures the importance of the guidelines in the most balanced way. I also agree with the Second Circuit that this focus on procedure is “more consonant with the day-to-day role of district judges in imposing sentences and the episodic role of appellate judges in reviewing sentences ... to permit the concept of ‘consideration’ [as required by Booker ] in the context of the applicable guidelines range to evolve as district judges faithfully perform their statutory duties.” United States v. Crosby, 397 F.3d 103, 113 (2nd Cir.2005).
The key is the faithful performance of the statutory duties set forth in section 3553. ■ That faithful performance will require more than the formulaic invocation of the words of the statute by sentencing judges. There will have to be explanations that are responsive to the sentencing issues raised by the parties and that relate the court’s decisions on those issues to the multiple purposes and factors of section 3553. See United States v. Cunningham, 429 F.3d 673, 679 (7th Cir.2005) (“[W]e have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise.”). The burden of explanation for the district courts is inescapably greater than it was before because of the more open-ended nature of sentencing post-J?oo/cer.[10] Although the guidelines were legally complex, and the fact-finding required by the guidelines could be burdensome at times, the bottom-line judgments were largely mechanical once the offense level and the criminal history numbers were calculated. All of that guidelines work is still there because the guidelines are still there. But now the bottom-line judgments are not mechanical. They must now be more nuanced judgments that reflect both the guidelines analysis and the larger context of the sentencing factors and purposes identified in section 3553.
Given this daunting task, there is value in procedural regularity that begins with the guidelines analysis and then, with particular attention to the sentencing issues raised by the parties, moves on to the additional analysis required by section 3553. While the district court’s reasoning can, as the majority states, “often be inferred by comparing what was argued by the parties or contained in the presentence report with what the judge did,” our ability to infer from the record should be no substitute for the trial court’s obligation to explain. That obligation is particularly important in these early days post-Booker, when the district courts must view and apply the guidelines in a new way. The guidelines are no longer self-justifying. They are not the safe harbor they once were. However, if district courts assume that the guidelines sentence complies with the sentencing statute, and focus only on the compliance of the non-guidelines sentence urged by the defendant, the district courts will effectively give the guidelines a controlling weight and a presumptive validity that is difficult to defend under the constitutional ruling in Booker.[11] That is precisely what happened in this case.
*529 III.
The district court began its sentencing analysis with a calculation of the guidelines sentencing range and the rejection of any guidelines departures. As I have indicated, I think that guidelines calculation is a sensible beginning point. But the district court then made a mistake because of its view that a guidelines sentence should be accorded substantial weight and that any deviation from the guidelines must be based on clear and persuasive reasons. Having completed the guidelines analysis, the court said to defense counsel: “All right. Let’s turn then to a — whether a nonguideline sentence will be appropriate under — taking into account the factors set forth at [section 3553(a) ].” This question assumed that a sentence within the calculated guidelines range complied with the multi-purpose, multi-factor requirements of section 3558(a). The court stated that it would only subject any non-guidelines sentence urged by defense counsel to the analysis required by the sentencing statute.
Although defense counsel, wittingly or unwittingly, tried to shift the focus, arguing at length that a guidelines sentence would not comply with the requirements of section 3553(a), and a sentence below the guidelines would, the district court did not shift its focus. After hearing the government’s predictable argument for a guidelines sentence — “the guidelines in this particular case take into account all of the considerations and all of the goals set forth in section 3553(a)”' — the district court stated its conclusion:
So, for those reasons,[12] I’m not inclined to impose a nonguideline sentence in this case. I have the authority to do so, and I have considered the various factors set forth in [section 3553(a) ], and have listened to the eloquent argument of [defense counsel], but I think under the circumstances I’m going to impose a sentence that is within the sentencing guidelines even though they are part advisory and not mandatory.
After announcing its specific sentence, which included imprisonment for a term of 46 months (a sentence at the bottom of the *530 guidelines range), the court stated that “a higher sentence is not necessary to achieve the various goals of sentencing.” It then added: “For the reasons previously indicated, I see no basis for a departure from the guidelines within the guidelines framework and no clearly identified and persuasive reasons to impose a non-guidelines sentence.”
In the end, the court applied the approach to the guidelines that it announced at the beginning of the sentencing hearing. Given the substantial weight that it gave to the appropriateness of a guidelines sentence, it required clearly identified and persuasive reasons to impose a non-guidelines sentence. Finding none, and having therefore concluded that a non-guidelines sentence did not comply with the purposes and factors of the sentencing statute, it imposed a guidelines sentence whose compliance with the sentencing statute was assumed.
Does it matter that the district court’s negative finding that a non-guidelines sentence did not comply with the sentencing statute might imply a positive finding that a guidelines sentence did comply with the statute? Does it matter that the specific sentence that the district court imposed here might seem reasonable?[13] In my view, it does not.
Word choices matter because they reflect mental processes, and mental processes matter because they organize information for the decision-maker. Here, in explicit terms, the district court organized all of the information it received from the parties around the wrong proposition— could a non-guidelines sentence be justified? The court never questioned the assumption that the guidelines sentence complied with the statute. In the future, when district courts have adjusted to the new way of thinking about the guidelines required by Booker, there may be some justification for greater tolerance of word choices and implied findings. But not yet.
Moreover, there is not one reasonable sentence. Reasonableness covers a wide span of possibilities, including possibilities outside the guidelines. The district court gave insufficient consideration to those possibilities because of its assumption that a guidelines sentence complied with the sentencing statute. That assumption was a legal error, and “errors of law render a sentence per se unreasonable.” Pho, 433 F.3d at 60-61. Resentencing is therefore required. I respectfully dissent.

. The district court's decision to give substantial weight to the guidelines and its requirement that a party demonstrate "clearly identified and persuasive reasons” before the court will consider and impose a non-guidelines sentence tracks the language used by the district court in United States v. Wilson, 350 F.Supp.2d 910, 912 (D.Utah 2005). In that case, which was decided just one day after Booker, the district court determined that "in all future sentencings, the court will give heavy weight to the Guidelines in determining *525 an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons.” Id. For the reasons discussed below, I reject this approach.

. Section 3553(b)(1) of the SRA made the guidelines mandatory, stating that a sentencing court "shall impose a 'sentence of the kind, and within the range, referred to in [the guidelines]” (except in circumstances justifying a departure). Finding this provision "incompatible with [its] constitutional holding,” the Supreme Court severed and excised it. United States v. Booker, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2000).

. In this case, the district court (after addressing the defendant's legal and factual objections to the Presentence Report) properly began its sentencing determination by calculating the guidelines sentencing range. This approach was consistent with that prescribed by the majority of circuits that have addressed this issue. See, e.g., United States v. Kristl, 437 F.3d 1050, 1056 (10th Cir.2006); United States v. McBride, 434 F.3d 470, 476 (6th Cir.2006); United States v. Hughes, 401 F.3d 540, 546 (4th Cir.2005); United States v. Mares, 402 F.3d 511, 519 (5th Cir.2005); United States v. Dean, 414 F.3d 725, 727 (7th Cir.2005); United States v. Mashek, 406 F.3d 1012, 1017 n. 7 (8th Cir.2005); United States v. Shelton, 400 F.3d 1325, 1332 n. 9 (11th Cir.2005).

.The so-called "parsimony” provision, which requires that sentences be only as long as necessary to serve the purposes listed in section 3553(a)(2), has received scant attention from courts. Commentators note that this provision, which was originally part of the House sentencing reform bill and was later added to the Senate resolution and adopted in committee, "is not just another 'factor' to be considered along with others set forth in Sec *526 tion 3553(a) ... — it sets an independent limit on the sentence a court may impose.” David L. Mccolgin & Brett G. Sweitzer, Grid & Bear It, 29 Champion 50, 50 (2005); see also United States v. Foreman, 436 F.3d at 644 n. 1 (6th Cir.2006) ("[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes’ of section 3553(a)(2).”) (quoting 18 U.S.C. § 3553(a)); Richard S. Frase, Punishment Puiposes, 58 Stan. L.Rev. 67, 83 (2005) (stating that "the structure of section 3553(a),” which lists the parsimony principle first, suggests that this principle "set[s] overall limits on the crime-control and other purposes which follow”).

. These purposes are:
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
18 U.S.C. § 3553(a)(2).

. As the Federal Public Defenders point out in their amicus curiae brief, we required, even before Booker, that a court's explanation of its sentence "sufficiently show[] a thoughtful exercise of the court's sentencing responsibility and a degree of care and individualized attention appropriate to the solemnity of the sentencing task.” United States v. Vazquez-Molina, 389 F.3d 54, 59 (1st Cir.2004), cert. granted, judgment vacated, and case remanded on other grounds, 544 U.S. 946, 125 S.Ct. 1713, 161 L.Ed.2d 520 (2005).

. Many commentators argue that by giving the guidelines controlling weight, and abdicating the responsibility to take account of the other section 3553(a) factors, courts “effectively mak[e] the guidelines as binding as they were before Booker,” thereby violating Booker's constitutional command. Mccolgin & *529 Sweitzer, supra, at 53; see also Frank O. Bowman, III, Beyond Band-Aids: A Proposal for Reconfiguring Federal Sentencing After Booker, 2005 U. Chi. Legal F. 149, 183 (2005). Justice Stevens made a similar point in his dissent in Booker, stating that the "sentencing range is now nothing more than a suggestion that may or may not be persuasive to a judge when weighed against the numerous other considerations listed in [section 3553(a)].” 243 U.S. at 300, 37 S.Ct. 273 (Stevens, J„ dissenting in part). Justice Scalia wrote to the same effect, stating that “logic compels the conclusion that the sentencing judge, after considering the recited factors (including the Guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise ... its opinion would surely say so.” Id. at 305, 37 S.Ct. 273 (Scalia, J., dissenting in part). To be sure, these are dissents to the remedial decision in Booker, which does not elaborate on its statement that the guidelines must be ”consider[ed]” post-Booker. But given the close divisions on the Court about the post-Booker role of the guidelines, and given the new composition of the Court, it would be foolhardy to ignore the constitutional dangers of adopting an approach to the guidelines post-Booker that approximates, in a new guise, the mandatory guidelines.

. Before stating its conclusion, the district court carefully explained why defense counsel's arguments about the country's policy toward illegal immigration, the disparities generated by fast-track sentencing, the poverty and difficult family circumstances of the defendant, and the eventual deportation of the defendant, did not justify a non-guidelines sentence. This careful explanation was characteristic of the district court’s work throughout the proceedings. My objection to the district court’s work relates only to its erroneous approach to the guidelines.

. I must also acknowledge my uneasiness with the majority's suggestion that “a plausible outcome” translates into a reasonable sentence. I would prefer that we not prematurely offer glosses on the content of "reasonableness.” We should give content to the concept of reasonableness through our review of specific sentences, especially given the increased importance of appellate review post-Booker. See Foreman, 436 F.3d at 644 ("Under the mandatory Guideline system, appellate review was not integral to assuring uniformity. Now, with the advisory Guidelines and more sentencing variables, appellate review is all the more important in assuring uniformity and reducing sentencing disparities across the board.”). I am concerned that the majority’s language needlessly dilutes an already deferential standard of review. See United States v. Pho, 433 F.3d 53, 61 (1st Cir.2006) (stating that the abuse of discretion standard, and by extension, the reasonableness standard, "contemplates substantial deference to the judgment calls of a nisi prius court”).