## UNITED STATES of America, Plaintiff–Appellee,

v.

## Ronnie S. MILLS (92–5324) and Velinda S. Naftzger (92–5505), Defendants–Appellants.

### Nos. 92–5324, 92–5505.

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1993.

Decided July 29, 1993.

James E. Arehart, Asst. U.S. Atty., James Zerhusen, Asst. U.S. Atty. (argued and briefed), Karen K. Caldwell, U.S. Atty., Lexington, KY, for U.S.

Derek G. Gordon (argued and briefed), Anggelis, Philpot, Gordon, & Simpson, Lexington, KY, for Ronnie Saunders Mills.

Ronnie Saunders Mills, pro se.

Before: KENNEDY, NORRIS, and SUHRHEINRICH, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Defendants, Ronnie Saunders Mills and Velinda Sue Naftzger, appeal their convictions and sentences for pharmacy burglary in violation of 18 U.S.C. § 2118.

## I.

On August 11, 1991, defendants drove from Tennessee to Virginia looking for a drugstore to burglarize. Failing to find a desirable target in Virginia, the pair drove the next day to a mall in Harlan, Kentucky, where they observed an unattended pharmacy. De-

fendants broke into the store and stole drugs worth over $2,000, a silverware chest, and a diamond ring. Two witnesses to the incident alerted Kentucky police, who in turn notified Virginia authorities. A Virginia police officer pursued defendants as Mills drove his car at speeds of up to 100 miles per hour, weaving in and out of traffic, along a two-lane mountain road between Kentucky and Virginia. In an attempt to intercept defendants' car, the Police Chief of Pennington Gap, Virginia, Curtis Minton, pulled his unmarked cruiser onto the road. Mills swerved to avoid the cruiser but lost control of his car and hit Minton's vehicle. Minton sustained serious injuries.

Mills entered a guilty plea to one count of aiding and abetting the commission of pharmacy burglary, in violation of 18 U.S.C. §§ 2118(b) and (c)(1), and received a sentence of 120 months' imprisonment. Following a jury trial, Naftzger was convicted on multiple counts, including aiding and abetting the commission of pharmacy burglary. She was sentenced to 108 months' imprisonment, with a supervised release term of six years.

## II.

### A. Introduction of Incriminating Statements

■ Naftzger asserts that the trial court's admission of several incriminating statements she made after her arraignment violated her Sixth and Fifth Amendment rights. This court reviews the district court's factual findings on suppression issues for clear error, while analyzing the district court's legal conclusions under a *de novo* standard. *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992).

After Naftzger's arrest, FBI agents advised her of her *Miranda* rights and she executed a waiver. She then denied active participation in the pharmacy burglary. Following that interview, two agents from the Bureau of Alcohol, Tobacco, and Firearms spoke with Naftzger about an unrelated arson investigation into the burning of codefendant Mills' store. Naftzger answered affirmatively when the agents asked if she had

been advised of and understood her rights, and she acknowledged the waiver she had just signed. Naftzger then gave a sworn, taped statement about the arson. This interview was interrupted when she had to be escorted up one floor for her arraignment. The ATF agents attended the arraignment and observed the magistrate advise Naftzger of her constitutional rights and the charges against her, and appoint an attorney for her.

According to the ATF agents, Naftzger approached them after the arraignment and asked to speak to them. The agents did not re-advise her of her *Miranda* rights. Although Naftzger began by discussing the arson again, she soon brought up the burglary and her concern that she had never seen the diamond ring she and Mills allegedly stole. Her appointed attorney was not present at this conference. Naftzger then admitted she and Mills had committed fifteen or sixteen burglaries together. She also admitted to an active role in the burglary of the pharmacy. The district court denied Naftzger's motion to suppress these admissions.

■ Naftzger asserts that introduction of testimony about the admissions is at odds with the Supreme Court's decision in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The *Jackson* Court held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Jackson*, 475 U.S. at 636, 106 S.Ct. at 1411. The Court relied upon *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which had previously held that once a person in custody has "expressed his desire to deal with the police only through counsel," the police violate his or her Fifth Amendment rights if they initiate further questioning before counsel is made available, "unless the accused himself initiates further communication ... with the police." *Jackson*, 475 U.S. at 626, 106 S.Ct. at 1405 (quoting *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85). The Court in *Jackson* extended the *Edwards* rule to the Sixth Amendment context, concluding that a defendant's invocation of his or her Sixth Amend-

ment right to counsel at an arraignment likewise prevents further police-initiated interrogation about that offense. *Id.* 475 U.S. at 636, 106 S.Ct. at 1411.

■ We agree with Naftzger that her request for counsel at arraignment would normally suffice to invoke her *Jackson* right to have counsel present at police questioning about the pharmacy burglary. However, the record is clear that the agents' discussion with Naftzger after her arraignment was prompted when she approached them. *Jackson's* prophylactic rule, like the rule in *Edwards v. Arizona*, applies only to *"police-initiated* questioning." *See id.* at 635, 636, 106 S.Ct. at 1410, 1411 (emphasis added); *see also Murphy v. Holland*, 845 F.2d 83, 85 (4th Cir.) (finding no *Jackson* violation because defendant initiated conversation), *cert. denied*, 488 U.S. 908, 109 S.Ct. 258, 102 L.Ed.2d 246 (1988); *Smith v. Dugger*, 840 F.2d 787, 794 (11th Cir.1988) (*Jackson* inapplicable because defendant clearly initiated discussion), *cert. denied*, 494 U.S. 1047, 110 S.Ct. 1511, 108 L.Ed.2d 647 (1990).

After a suppression hearing, the district court found "credible and believable" the testimony of one of the ATF agents that Naftzger asked to speak to the agents as she left the courtroom. Naftzger offered no evidence to refute the agent's testimony. Therefore, the district court's finding that Naftzger initiated the conference is not clearly erroneous and the court was not required to exclude the incriminating statements she made in her post-arraignment discussion with ATF agents.

■ Naftzger next contends that the introduction of her admissions also infringed her Fifth Amendment right against self-incrimination because she did not voluntarily, knowingly, and intelligently waive her *Miranda* rights to remain silent and to have counsel present. We disagree. Naftzger was advised of these rights at least twice, signed a written waiver, and later re-affirmed that waiver. Although she did not execute another waiver before the post-ar-

raignment conference, she had been advised by a judge just minutes earlier of her constitutional rights. The record supports the district judge's conclusion that Naftzger voluntarily and intelligently waived those rights prior to the second session with the ATF agents. The district court's admission of Naftzger's inculpatory statements was not error.

### B. Admission of 404(b) Evidence

■ Naftzger next maintains that the district court erred in admitting evidence under Fed.R.Evid. 404(b) [1] that she and Mills had previously committed a number of break-ins together. We review the trial court's 404(b) decisions for abuse of discretion. *United States v. Acosta–Cazares*, 878 F.2d 945, 948 (6th Cir.), *cert. denied*, 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989).

■ The evidence was admitted for a proper purpose under Fed.R.Evid. 404(b). Naftzger testified on her own behalf at trial, insisting that she knew nothing of the planned burglary, did not participate in it, and even slept through much of the preparation. Her involvement in prior, similar burglaries proved her intent, knowledge, and ongoing plan with Mills to burglarize drugstores. Moreover, the probative value of the evidence outweighed its prejudicial effect. Fed.R.Evid. 403. The district court accordingly did not abuse its discretion in admitting the evidence.

### C. Sufficiency of the Evidence on the Burglary Counts

■ Naftzger contends that the evidence was insufficient to sustain her conviction under 18 U.S.C. § 2118. Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Section 2118 provides, in pertinent part:

---

1. Fed.R.Evid. 404(b) provides for the exclusion of evidence of other crimes or acts to prove a defendant's character, but allows such evidence

to show other purposes such as motive, opportunity, and intent.

(b) Whoever, without authority, enters or attempts to enter, or remains in, the business premises or property of a person registered with the Drug Enforcement Administration ... with the intent to steal any material or compound containing any quantity of a controlled substance shall, except as provided in subsection (c), be fined not more than $25,000 or imprisoned not more than twenty years, or both, if (1) the replacement cost of the controlled substance to the registrant was not less than $500, (2) the person who engaged in such entry or attempted such entry or who remained in such premises or property traveled in interstate or foreign commerce or used any facility in interstate or foreign commerce to facilitate such entry or attempt or to facilitate remaining in such premises or property, or (3) another person was killed or suffered significant bodily injury as a result of such entry or attempt. (c)(1) Whoever in committing any offense under subsection (a) or (b) assaults any person, or puts in jeopardy the life of any person, by the use of a dangerous weapon or device shall be fined not more than $35,000 and imprisoned for not more than twenty-five years.

The indictment charged that on or about August 12, 1991, Mills and Naftzger,

aiding and abetting one another, knowingly and willfully did, without authority, enter, attempt to enter, and remain in the L.V. LEE DRUG COMPANY, INC., the business premises of Joe Wesley Myers, a person registered with the Drug Enforcement Administration ..., with the intent

to steal controlled substances having a replacement cost to the registrant in excess of $500 and to facilitate said offense, the defendants did travel in interstate commerce from Kentucky to Virginia; further in committing said offense, [defendants] did assault and put in jeopardy the life of CURTIS MINTON, by the use of a dangerous device, that is an automobile; all in violation of Title 18 United States Code, Sections 2118(b) and (c)1 and Title 18, United States Code, Section 2.

Naftzger asserts that the evidence was insufficient to support her conviction on this count for three reasons. All three focus on the enhancement the statute provides under subsection (c)(1) for assault with a dangerous weapon "in committing" the offense described in subsection (b).

■■■ First, Naftzger suggests that the language of 18 U.S.C. § 2118(c)(1) was not meant to apply to assaults during flight to avoid apprehension after a burglary. That is, the "assault" on Minton did not occur "in committing any offense" as required by (c)(1). We have found no reported cases interpreting the reach of subsection (c)(1). However, because Congress indicated that the pharmacy burglary statute was modeled after the federal bank robbery statute, 18 U.S.C. § 2113, see H.R.Rep. No. 644, 98th Cong., 2d Sess. 4 (1984), reprinted in 1984 U.S.C.C.A.N. 521, 524, we look to interpretations of that statute for guidance.[2]

Courts applying the bank robbery statute have concluded that the reference in 18 U.S.C. § 2113(d) to assaults in committing

[2]. The relevant portions of 18 U.S.C. § 2113 provide:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.... [s]hall be fined not more than $5000 or imprisoned not more than twenty years, or both.
    . . . .
(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any

person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.
(e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct. 18 U.S.C. § 2113. Subsection (c)(1) of § 2118 substantially tracks the language of subsection (d) of § 2113 quoted above.

the offense of bank robbery includes injuries caused during hot pursuit from a bank robbery. *See United States v. Pietras*, 501 F.2d 182, 187 (8th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974); *cf. United States v. Martin*, 749 F.2d 1514, 1518 (11th Cir.1985) (finding that the offense in § 2113(a) extends for hot pursuit); *United States v. Jarboe*, 513 F.2d 33, 36–37 (8th Cir.), *cert. denied*, 423 U.S. 849, 96 S.Ct. 90, 46 L.Ed.2d 71 (1975) (discussing aiding and abetting liability and whether a robbery has ended, pursuant to § 2113(a), prior to hot pursuit). Moreover, in determining who the victim of a bank robbery is for Sentencing Guidelines purposes, this court has commented, "[a]s the crime of bank robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight." *United States v. Muhammad*, 948 F.2d 1449, 1456 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). The similar language of 18 U.S.C. § 2118(c)(1) prohibiting assaults in committing the offense of pharmacy burglary should likewise extend to assault during immediate flight.

In addition, and most significantly, an element of the crime of pharmacy burglary as charged in the indictment was interstate travel, which included defendants' flight from Kentucky into Virginia after the burglary. Because the assault on Minton took place during this travel, it occurred in the course of the pharmacy burglary. Accordingly, defendants did injure Police Chief Minton in committing the offense of pharmacy burglary as required by 18 U.S.C. § 2118(c)(1).

■ Naftzger next argues that because the collision with Police Chief Minton's cruiser was an accident, there was insufficient evidence to convict her of aiding Mills to "assault or put in jeopardy the life of Curtis Minton by the use of a dangerous device." [3]

The district court defined the term "assault" as a "deliberate attempt to inflict bodily harm or injury upon the person of anoth-

er." While the government refers to Mills' collision with Minton's cruiser as "ramming," the record contains little evidence of a deliberate attempt to collide with Minton. Even Police Chief Minton himself testified that Mills and Naftzger "lost control trying to pass me."

Nevertheless, evidence of intent was not essential because the jury could have found that Mills and Naftzger "put in jeopardy the life of [Curtis Minton]," which is the alternative to assault listed in subsection (c)(1). The court defined "putting in jeopardy" as meaning "to knowingly do an act which exposes [a] person to a risk of death." Viewing the evidence in the light most favorable to the government, the jury could easily have found that the car's speed and Mills' reckless driving knowingly exposed Minton to a risk of death, even if the wreck was not deliberate.

■ Finally, Naftzger contends that, even if there was sufficient evidence that Mills knowingly exposed Minton to a risk of death, there was no proof that she aided and abetted in this recklessness. In Count 1, she was convicted of aiding and abetting the burglary and assault. As the court instructed the jury, the government had to prove that she intentionally helped or encouraged someone else to commit the crime of "burglary of a registered pharmacist using a dangerous device to assault or put in jeopardy the life of another."

Naftzger maintains that there was no evidence that she did anything to help or encourage the assault/putting in jeopardy of Police Chief Minton. We disagree. Mills testified that as he sped away from Harlan, Naftzger looked through their loot and watched behind to see if they had lost the pursuing police officers. Clearly, Naftzger actively assisted Mills in fleeing, and the pair's reckless flight created a known risk of danger to Minton and others on the road. Hence, sufficient evidence supported the jury's finding that Naftzger aided and abet-

**3.** Naftzger does not argue that the getaway car cannot be a "dangerous weapon or device" for

purposes of 18 U.S.C. § 2118(c)(1).

ted Mills in conduct that knowingly jeopardized Minton's life.[4]

In sum, there was sufficient evidence of all the elements required for conviction under 18 U.S.C. § 2118.

## D. Sentencing Issues

■ This court reviews *de novo* a district court's application of the Sentencing Guidelines when that application involves mixed questions of law and fact. *Muhammad*, 948 F.2d at 1455. The district court's findings of fact in connection with sentencing are analyzed under a clear error standard. *Id.*

### 1. Assault Guideline

■ In sentencing both Mills and Naftzger, the district court applied the base offense level for aggravated assault (U.S.S.G. § 2A2.2), rather than that for burglary of other structures (§ 2B2.2). The statutory index to the guidelines, which matches statutes with their appropriate guideline sections, lists one possibility for a conviction of 18 U.S.C. § 2118(b), the burglary of other structures guideline, § 2B2.2. The index offers three choices for a violation of 18 U.S.C. § 2118(c)(1)—the guideline for assault with intent to commit murder (§ 2A2.1), the section on aggravated assault (§ 2A2.2), and the section on robbery (§ 2B3.1).

The introduction to the index states: "If more than one guideline section is referenced for the particular statute, use the guideline most appropriate for the nature of the offense conduct charged in the count of which the defendant was convicted." Section 1B1.2(a) likewise requires that the guideline "most applicable to the offense of conviction" be used.

The parties agree that neither the section for assault with intent to commit murder, nor the guideline for robbery apply. Although Naftzger does urge application of the guideline for minor assault (§ 2A2.3), that is not an option listed for a violation of § 2118. Consequently, the district court was left with

a choice between the burglary guideline (§ 2B2.2) and the aggravated assault guideline (§ 2A2.2). Because the indictment listed both § 2118(b) and § 2118(c)(1), the court opted for aggravated assault. We hold that this was error.

Section 2118(b) provides three jurisdictional alternatives. Pharmacy burglary is a federal crime if: (1) the cost of the controlled substances stolen was at least $500, *or* (2) the perpetrator traveled or used any facility in interstate commerce to facilitate the burglary, *or* (3) a person was killed or seriously injured as a result of the burglary. 18 U.S.C. § 2118(b)(1)–(3). In charging a violation of § 2118(b), the indictment alleged both that defendants stole drugs valued at more than $500 and that they traveled in interstate commerce to facilitate the offense. Because the statute's jurisdictional prerequisites are listed in the alternative, however, the government was required to plead and prove only one of these.

Since the value of the controlled substances that defendants pilfered exceeded $500, the crime of pharmacy burglary was complete when Mills and Naftzger left the pharmacy. The only reason the government also charged interstate travel was to permit a sentencing enhancement under (c)(1) because the assault/putting in jeopardy of Police Chief Minton occurred during the flight across state lines. Although we have held that the assault on Minton, which occurred during defendants' interstate flight from the burglary·of the pharmacy, permitted their convictions under §§ 2118(b) and (c)(1), it does not follow that assault was the most appropriate guideline.

When, as here, the stolen narcotics exceed a value of $500, the assault need only be proved to enhance the sentence, not to obtain a conviction on the principal offense. In defendants' case, the gravamen of the offense was pharmacy burglary; the assault merely enhanced their sentences.

If an assault takes place in a drugstore, the use of the aggravated assault guideline

4. Naftzger uses similar arguments to challenge her conviction for conspiracy to commit pharmacy burglary. However, she was charged with conspiracy to violate subsection (b) of § 2118 only. The government was therefore not required to prove a conspiracy to assault Police Chief Minton.

would be more appropriate. The government could then rely upon the jurisdictional provision in § 2118(b)(3), as well as charging the sentence enhancement in § 2118(c)(1). As a result, assault would be the gist of the crime and an element the government must prove in order to obtain a conviction under subsection (b).

The fact that the government could not charge defendants' assault on Minton under (b)(3) as well as under (c)(1) strengthens our belief that assault was not the gist of this offense. Under these circumstances, the assault/putting in jeopardy of Police Chief Minton is an aggravating circumstance that may qualify for enhancement under (c)(1), but it could not fairly be described as the "offense of conviction" within the meaning of the Sentencing Guidelines. Nor would the aggravated assault guideline appear to be the most appropriate base offense. Instead, the guideline listed for a conviction under § 2118(b), the section for burglary of other structures (§ 2B2.2), should apply, and we reverse and remand for resentencing using that section.

### 2. Enhancements Under Aggravated Assault Guideline

■ Having applied the base offense level of § 2A2.2 for aggravated assault, the district court had available to it a number of upward adjustments (called specific offense characteristics) permitted by that section. The court imposed three enhancements under this section: (1) a two-level enhancement for more than minimal planning, (2) a four-level increase for assaults in which a dangerous weapon is not discharged but is otherwise used, and (3) another four-level adjustment for Police Chief Minton's serious bodily injury. *See* U.S.S.G. §§ 2A2.2(b)(1), (b)(2)(B), (b)(3)(B). Because we hold that § 2A2.2 is not the most appropriate guideline, these three enhancements, which all appear as specific offense characteristics of the offense of aggravated assault, must be vacated.[5]

We note, however, that § 2B2.2 on burglary of other structures includes a similar enhancement for more than minimal planning that the district judge on remand may find applicable. *See* U.S.S.G. § 2B2.2(b)(1). In contrast, § 2A2.2's increase for serious bodily injury has no analogue in the burglary guideline and must be vacated. In its place, the court may choose to apply the upward adjustments that are available under § 2B2.2 and not § 2A2.2. *See* U.S.S.G. § 2B2.2(b)(2)–(3).

The addition of four levels for use of a dangerous weapon as charged under the aggravated assault statute presents a more difficult question. Section 2A2.2(b)(2)(B) permits a four-level increase when "a dangerous weapon (including a firearm) was otherwise used" in the assault. The government's theory at trial was that defendants' reckless, high-speed driving amounted to the use of a dangerous weapon (their automobile).

Mills argues that his collision with Police Chief Minton was accidental and did not rise to the level of culpability exhibited by the defendants in cases where this court has held or assumed that a speeding car can be a dangerous weapon. *See United States v. Beckner*, 983 F.2d 1380, 1383 n. 1 (6th Cir. 1993) (car can be dangerous weapon under U.S.S.G. § 2A2.4(b)(1)); *United States v. Gibson*, 896 F.2d 206, 208, 210 n. 1 (6th Cir.1990) (charge of assault with dangerous weapon when defendant suddenly accelerated and drove straight at police officer in federal park); *cf., United States v. Plummer*, 789 F.2d 435 (6th Cir.1986) (charge of assaulting a federal officer on similar facts).

Because the district court applied the wrong base offense level, we need not decide whether it was proper for the court to add points under § 2A2.2(b)(2)(B), which applies to defendants who "otherwise use" a dangerous weapon. We point out, however, that the burglary guideline permits a two-point increase only if "a dangerous weapon (including a firearm) was *possessed.*" U.S.S.G. § 2B2.2(b)(4) (emphasis added). On remand, the district court should reconsider its decision to add points to defendants' sentences for a using dangerous weapon, in view of the

---

**5.** Mills alone challenges these three enhancements, but they must be vacated as to both defendants since they are only options when the aggravated assault guideline applies.

difference in the language of the two sections.

### 3. Increase for Official Victim

■ Only Naftzger challenges the three-step adjustment meted out because the victim of the assault was a law enforcement officer. Section 3A1.2(b) provides an offense-level increase when,

> during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury.

In imposing this enhancement, the district court merely noted that Police Chief Minton is a law enforcement officer. Neither the court nor the probation department in its presentence report discussed whether Naftzger or Mills (for whose conduct Naftzger may have been accountable) knew or had reasonable cause to believe Minton was a law enforcement officer.

Minton's cruiser was unmarked, and Minton testified he was not sure whether he had activated the warning light. Nor was there any testimony regarding what type of light it was and whether it was visible without being lit. It may well be that Mills and Naftzger had reason to know Minton was a law enforcement agent, given that they were being pursued by at least one marked cruiser with lights and sirens activated. Absent a finding about defendants' knowledge, however, we are unable to judge the propriety of the three-point increase. "For this court to perform its function properly, ... the record developed below must indicate with specificity what facts the district court considered in reaching its offense level calculation." *United States v. Range*, 982 F.2d 196, 198 (6th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3042, 125 L.Ed.2d 728 (1993). We therefore remand for findings of fact as to defendants' knowledge of Minton's status as a law enforcement officer.

### 4. Reckless Endangerment

■ The district court raised Mills' offense level by two points for reckless endangerment pursuant to U.S.S.G. § 3C1.2. The judge relied upon the presentence report's finding that in driving recklessly at speeds of up to 100 miles per hour on mountain roads, Mills evinced a "wanton disregard for the safety of other motorists." This finding was not clearly erroneous, and Mills' upward adjustment under this section is affirmed.

### 5. Personal Characteristics

■ Mills' final contention, that the district court did not take into account his unique personal characteristics in sentencing him, is meritless, since he did not make a motion for a downward departure and since the district court subtracted twenty to fifty-five months from his sentencing range for substantial assistance.

### III.

For these reasons, we affirm defendants' convictions and reverse and remand the sentences of both for resentencing under § 2B2.2 of the Sentencing Guidelines. In addition, we remand for further fact finding on defendant Naftzger's enhancement for official victim. We affirm, however, the increase to Mills' sentence for reckless endangerment. Accordingly, this case is reversed and remanded to the district court for further proceedings consistent with this opinion.