NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0439n.06
Filed: June 27, 2006

No. 05-6380

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DeANGELO OVERTON,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

_____/

Before:     MARTIN and GILMAN, Circuit Judges; and SARGUS, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge. The defendant, DeAngelo Overton, was charged in a one-count indictment with possessing fifty grams or more of crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (carrying a mandatory minimum of ten years with a maximum penalty of life imprisonment). Overton eventually pled guilty and then moved to withdraw his guilty plea. Following hearings on a motion to suppress evidence and the denial of the defendant's motion, he again pled guilty, without a plea agreement. The district court sentenced Overton to 210 months imprisonment. He now appeals arguing that his sentence is unreasonable. We AFFIRM the defendant's sentence.

**I.**

_____

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

On June 20, 2003, the defendant agreed to deliver two ounces of crack cocaine to a confidential informant working for the Metro Nashville Police Department Crime Suppression Unit. Overton agreed to deliver the crack cocaine to a Days Inn Hotel. The police established surveillance and watched Overton arrive. He was driving a Pontiac Grand Am and was accompanied by his girlfriend and his girlfriend's five year old daughter, who, at the time, was not visible to the officers. When Overton parked in front of the room, opened the driver's side door and popped open the trunk, Detective Johnson directed the officers to execute the arrest. The officers moved in and later testified to having identified themselves both verbally and through badges and police markings as law enforcement officers.

Detectives Dixon and Galluzzi were the first officers to approach and were dressed in marked police raid vests. They ran to the driver's side door whereupon the defendant shut the door. The detectives claim that from two feet away, they loudly identified themselves as officers and ordered Overton to turn off the car. They also allege that Overton looked at them, and in response to their command, "Police. Stop. Turn off the car," Overton shook his head "No." Overton then put the car in reverse and rammed Detective Tony Jackson's unmarked police vehicle, which was parked directly behind Overton in order to block him in. Overton then put the car in drive and rammed a parked car in front of him. Overton hit the parked car so hard that it spun the car around and into another officer's parked vehicle. The officers claim that they continued to yell "Police. Stop." But, Overton put the car in reverse once more and again rammed into Detective Jackson's car. Still within two to three feet of the defendant, and fearing that he was going to run them over,

the officers opened fire, flattening the car's tires, and breaking the driver's side front and back windows.

At this point, Overton got out of the car and yelled, "You shot the fucking kid." The officers had not in fact shot Overton's girlfriend's daughter. Overton then resisted arrest before the officers were able to subdue him. Detective Johnson advised Overton of his *Miranda* rights, and Overton then admitted that there were about nine ounces of crack cocaine in the trunk and that he was going to receive $2,000 for delivery. The officers recovered approximately eleven ounces of crack, as well as baggies of crack cocaine, digital scales, and $1,600 in cash.

Overton eventually pled guilty to a one count indictment. At sentencing, the district court applied a three level enhancement under U.S.S.G. § 3A1.2 for assaulting law enforcement officers in a manner creating a substantial risk of serious bodily injury. Overton objected and asserted that he did not know they were law enforcement officers. The district court overruled the objection. The district court then determined that Overton's offense level was 34 with a criminal history category of IV and an advisory guideline range of 210-262 months. The court sentenced Overton to 210 months imprisonment.

> The Court must take into account the sentencing guidelines. And we have spent a lot of time litigating the various points under the guidelines in order to figure out what the advisory guideline range was. And although I didn't rule in the defendant's favor on everything, I certainly ruled in the defendant's favor on significant issues — which kept his three points for acceptance of responsibility, despite the Government's opposition to that; and removed two points for obstructive conduct, which the Government argued passionately for as well. So we are left with a guideline range of 210 to 262 months.
>
> This Court's practice since *Booker* and *Fanfan* has been to generally impose a sentence in the guideline range unless there is . . . a darn good reason to not follow the guidelines and give a sentence within the guidelines.

In this case I cannot find that darn good reason to sentence Mr. Overton outside the guideline range. This was a serious crime with some aggravating factors to it.

The guidelines were constructed to help structure a sentence that reflects all the various aspects of the crime; so that for crimes that have characteristics and factors in common, a similar sentence is given across the country. That was the whole reason that the sentencing guidelines were put in place. And moreover, that defendants with similar criminal histories will receive comparable sentences for comparable crimes across the county, so that we do not have disparate sentencing.

What has usually influenced this Court to give a sentence that is not within the guideline range, which takes into account all those various factors of criminal history and the offense in question and all the aspects of the offense in question, is background information about a defendant that I find compelling or extraordinary in some manner. And I guess the only thing I find here extraordinary — and I'm afraid that I'm inclined to agree with [the prosecutor's] take on that background information, as opposed to [defense counsel's] take on that background information — is that here is a defendant who came from a wonderful background. He came from a wonderful background.

His mother made him go to church, go to school, finish school, do extra programs in both places. He has numerous siblings who have excelled. Everybody is working. Everybody is operating within the law. Everybody is succeeding.

And so Mr. Overton had everything going for him. And at some point, he turned his back on all of that. And so he has less excuse, in the Court's mind, for engaging in the conduct that he has engaged in now for several years, that has been harmful to others and society.

So I find nothing mitigating here. I just can't find it. Despite excellent advocacy on the part of [defense counsel], I just can't find it.

This is a very serious offense. He received a slap on the wrist for similar conduct. It didn't have any effect. He just continued on with serious conduct of this sort. And so the only way to really address the seriousness of this offense, to promote respect for the law, and to mete out a just punishment that hopefully will deter Mr. Overton and others and protect the public from his further crimes, is to give him a significant sentence, which takes into account all the various factors I've talked about of his criminal background and the seriousness of this offense.

So I am going to sentence him to the bottom of the guideline range, 210 months. But I'm not going below the guideline in this case, because I can't find any reason to do that. . . .

To address anger management issues, he shall participate in a mental health program, as directed by the probation office. . . .

Let me say to you that I applaud the efforts that you are making. I applaud your taking advantage of the courses that are being made available to you. I hope you will continue to take as many courses as you can to better yourself, to get control of your emotions and tendencies that have gotten you into trouble. I hope you'll continue to do that.

I have some hope for you. I do have some hope for you. I think that you are motivated to turn your life around, and I hope that you do that. I wish that very much for you.

I'm glad to see all your family here supporting you, and I hope they will continue to support you. You will need it.

Overton now appeals arguing that the enhancement was improper and that his sentence is unreasonable. The government asserts that this Court lacks jurisdiction over appeals where the district court chooses not to sentence below the guideline range, and even so, that the sentence is reasonable.

## II.

We reject the government's meritless jurisdiction argument, *see United States v. McBride*, 434 F.3d 470 (6th Cir. 2006), but conclude that the district court properly applied the enhancement and that the sentence is reasonable.

### A. *The Enhancement*

We have held that to evaluate a sentence for reasonableness, it must first be determined whether the advisory guideline range was properly calculated. *McBride*, 434 F.3d at 476 (citing

*United States v. Mickelson*, 433 F.3d 1050 (8th Cir.2006) ("As we recognized in *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir.2005), calculation of the appropriate guideline sentence is only the first step in sentencing decisions under *Booker*, for the court must also consider the § 3553(a) factors before making its ultimate decision.")). In this case, the only dispute about the guideline calculation is whether the enhancement for assaulting a law enforcement officer was proper.

Under U.S.S.G. § 3A1.2(b), the enhancement applies if "during the course of the offense or immediate flight therefore, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer . . . assaulted such officer in a manner creating a substantial risk of serious bodily injury." The district court conducted an evidentiary suppression hearing and heard testimony from the officers relating to the facts of the arrest. After hearing the testimony, the district court made the factual finding that Overton "knew that these were police officers." This factual finding is subject to reversal only if clearly erroneous. *United States v. Henley*, 360 F.3d 509, 516-17 (6th Cir.2004). Overton admits to the conduct but alleges that he did not know that the men approaching him were law enforcement officers.

The arresting officers testified that they were wearing clothing with police insignia and that they repeatedly yelled "Police. Stop." The district court also listed to Overton's testimony and concluded that it "certainly reveals to the Court that the defendant knew that these were police officers." The court's finding was based on its credibility determinations. This Court gives "great deference to the district court's credibility determinations as it is in the best position to observe witnesses." *United States v. Johnson*, 344 F.3d 562, 567 (6th Cir.2003). At best, Overton alleges

that his statements were ambiguous. Nevertheless, the officer's statements were clear, and a district court can choose to believe the officers' testimony. Thus, application of the enhancement was proper.

B. *Reasonableness Review*

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the federal sentencing guidelines are now advisory. A district court must "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a). This Court now reviews sentences for reasonableness. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005); *see also United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (stating that reasonableness is the *appellate* standard of review). This Court has held that "we may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such consideration." *Webb*, 403 F.3d at 383.

In *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), this Court determined that a sentence within a properly calculated advisory guideline range is afforded a presumption of reasonableness. Nevertheless, this "rebuttable presumption does not relieve the district court of the obligation to consider other relevant statutory factors or sufficiently articulate its reasoning so as to permit reasonable appellate review." *United States v. Morris*, — F.3d —, 2006 U.S. App. LEXIS 12250, at *5 (6th Cir. May 19, 2006) (citing *United States v. Richardson*, 437 F.3d 550 (6th Cir. 2006)); *see also Foreman*, 436 F.3d at 644 (explaining that "*Williams* does not mean that a

Guideline sentence will be found reasonable in the absence of evidence in the record that the district court considered all of the relevant section 3553(a) factors"); *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005) (reaffirming that "we as an appellate court must still have the articulation of the reasons the district court reached the sentence ultimately imposed"). Although this Court does not require "the ritual incantation of these factors to affirm a sentence," *Williams*, 436 F.3d at 708-09, there must be "sufficient evidence in the record to *affirmatively demonstrate* the court's consideration" of the relevant section 3553(a) factors, *McBride*, 434 F.3d at 476 n.3.

In this case, the district court properly calculated the advisory guideline range. The court then imposed a sentence at the bottom of that advisory range. To the extent that the district court's statement that it imposes a guideline sentence unless there is a "darn good reason" not to is simply a colloquial way of acknowledging that a sentence within the guidelines is afforded a presumption of reasonableness on appeal, *see Williams*, 436 F.3d at 708, the statement is not reversible error. If the district court was ignoring its mandate to "impose a sentence sufficient, but not greater than necessary" to achieve the purposes of sentencing, 18 U.S.C. § 3553(a), however, or if the district court was applying its own subjective standard of a "darn good reason" even if the section 3553(a) factors counseled against a sentence within the guidelines, then such a sentencing philosophy would run counter to statutory law and the law of this Circuit. *See McBride*, 434 F.3d at 476 (holding that consideration of the appropriate guideline range is "not the end of the sentencing inquiry; rather it is just the beginning"); *see also Foreman*, 436 F.3d at 644 n.1 (noting that reasonableness is the *appellate* standard of review and a district court must follow its statutory mandate). In the present

case, however, there is ample evidence that the district court considered the relevant section 3553(a) factors, including, most extensively, Overton's personal background.

First, the court noted that the guidelines are advisory and it had the power to vary from the recommended range. The court also discussed the seriousness of Overton's crime and his reaction as the officers approached. The court also mentioned aggravating factors, including the fact that Overton was committing the crime and fleeing in a reckless manner with an unrestrained five year old child in the backseat of the car.

The court further found that the defendant's criminal history was substantial and that he had been given "a slap on the wrist" by the state courts for very serious crimes, such as the instant offense. Thus, the court believed that Overton was not learning his lesson and would continue to commit crimes unless incarcerated for a substantial amount of time. The district court considered Overton's family background and rejected it as a mitigating factor because he came from a "wonderful background." Overton contests this characterization, but the district court found nothing extraordinary and mitigating about Overton's background compared to other defendants and other persons with similar backgrounds who do not consistently commit crimes.

The district court also considered the effect of drug crimes on society, the seriousness of the offense, and the need to avoid unwarranted sentencing disparities. The court discussed the need to deter Overton from future crimes and to protect the public. The court found most relevant the defendant's criminal history, the seriousness of the present offense, and the lack of mitigating evidence. Thus, the district court found no reason to vary from the guidelines, although the court imposed the lowest possible guideline sentence. Finally, the court discussed its hopes that Overton

would continue to take classes, such as anger management classes, and would work toward rehabilitation.

Although the sentence is a long one, it reflects the seriousness of the offense as well as a substantial criminal history, which includes being on probation at the time of the instant offense, as well as a conviction for a felony offense for discharging a firearm in a public place in an attempt to shoot at someone in a car. Other convictions include one for assault and a drug conviction for possession or casual exchange of cocaine, where Overton was originally charged with two counts of the sale of a controlled substance. The charges were lessened after he agreed to plead guilty. The defendant also had two other arrests, including one for aggravated assault with a deadly weapon. Given the district court's substantial consideration of the section 3553(a) factors and the affirmative evidence in the record indicating such consideration, we see no basis for determining that Overton's sentence is not reasonable.

**III.**

For the reasons discussed above, we AFFIRM the sentence imposed.