**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0177n.06

No. 09-6318

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 24, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

          Plaintiff-Appellee,

v.

TRYMANE ANDERSON, aka Chip,

          Defendant-Appellant.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

BEFORE:  BOGGS, SUHRHEINRICH, and STRANCH, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.**  Defendant Trymane Anderson appeals his sentence, arguing that the district court erred in applying an official-victim enhancement pursuant to U.S. Sentencing Guidelines Manual § 3A1.2(c)(1) (2008).  We VACATE the sentence and REMAND for further proceedings.

## I.  Background

On January 25, 2008, Detective Michael Gibbs with the Memphis Police Department's Organized Crime Unit was shot during the execution of a search warrant at Room 213 of the Garden Inn and Suites, in Memphis, Tennessee.  The warrant was obtained after Detective Christopher Oslanzi, also part of the Memphis Organized Crime Unit, made three purchases of crack cocaine. The first was on January 24, 2008.  Oslanzi was told by prostitute Patricia Walker that he could purchase drugs at that location.  Once there, he was directed to Room 213 by a woman called "Cinnamon," who told Oslanzi he could buy crack from an individual named "Chip."  Oslanzi

knocked on the door of Room 213 and Chip–Defendant Anderson–answered. Defendant sold Oslanzi twenty dollars worth of crack cocaine.

The second transaction took place on January 25, 2008, at approximately 6:17 p.m. This time Detective Angela Workman accompanied Oslanzi. They were admitted to Room 213 by Defendant's girlfriend, Denna Freesen. The officers saw Defendant. Next to him was a revolver with a silver finish and black electrical tape around the handle. Both detectives bought twenty dollars worth of crack cocaine from Defendant and left the room.

The third transaction took place an hour later. Both detectives went back to Room 213. Defendant answered the door. Defendant did not have any drugs, and he directed co-Defendant Albert Taylor ("Co-Defendant Taylor") to take the detectives to get some crack. Defendant gave Oslanzi his cell phone number and told him to call ahead next time so that the drugs would be waiting. Oslanzi waited in the hallway while Workman went with Co-Defendant Taylor to Room 118. Workman purchased forty dollars worth of crack cocaine from Taylor.

After this purchase, the detectives returned to Room 213. A man named "Slick" arrived to buy drugs. Slick saw Oslanzi and told Defendant that he thought Oslanzi was the police. Co-Defendant Taylor then attempted to get rid of everything in the room. He tried to hide the gun in a vent, but it would not fit. Defendant abandoned everything and walked out of the room.

At this point a search warrant was obtained for Room 213, naming Defendant as a suspect. Officers with the Memphis Organized Crime Unit went to the room wearing Memphis Police Department raid gear, which consisted of a black vest with "POLICE" in large white letters. Detective Gibbs knocked and announced "POLICE" and forced entry after no response. As Gibbs

entered, Co-Defendant Taylor fired a shot from inside the room, striking Gibbs in the face. Defendant was in the hallway during the incident and was also taken into custody.

Defendant was charged in a superseding indictment with two counts of possession of a controlled substance with the intent to distribute in violation of 21 U.S.C.§ 841(a)(1) (counts one and two), one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count three), and one count of possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count four). During the first day of trial, Defendant entered an open plea to the court on the first two counts of the indictment and pleaded guilty as to the remaining two counts the next day.

The presentence report (PSR) assigned a base offense level of 20 under USSG § 2K2.1 in light of Defendant's prior felony conviction for a crime of violence. Two levels were added under USSG § 3C1.1 for obstruction of justice. Six levels were added under USSG § 3A1.2(c)(1) for official-victim status, alleging that Defendant and Co-Defendant Taylor knew or had reasonable cause to believe Gibbs was a law enforcement official at the time of the shooting. This gave Defendant a total offense level of 28 and a criminal history category of III, with a resulting advisory Guidelines range of 97 to 121 months as to counts one, two, and three, and a statutory minimum of 120 months on count four.

Defendant objected, arguing that the official-victim enhancement was improper because he had not been charged with assaulting an officer, he was not present when Gibbs was assaulted, and Co-Defendant Taylor took full responsibility for the shooting. The Government argued in response that the enhancement was proper because Defendant should be held accountable for Co-Defendant

-3-

Taylor's conduct under the "relevant conduct" provision, USSG § 1B1.3. The Government argued that the assault on Gibbs was reasonably foreseeable by Defendant.

At the sentencing hearing, Defendant argued that the six-level enhancement was improper:

> And I think in order for that adjustment to apply, it would of necessity - - it's necessary to find that the defendants in this case knew that it was police officers or had reason to believe that it was police officers or officials who were, in fact, entering the premises at that time.
>
> And Mr. Taylor's testimony and the facts surrounding the case indicate that there was no knowledge that these were officers who were entering the door . . . and obviously Mr. Anderson not being present in the room is - - had no knowledge as to what was going on at that time.
>
> I understand that the government's position is that this is applicable because of the relevant conduct provisions that I guess one should just assume that if you are engaged in illegal drug sales that the police could and would eventually knock on your door. But I believe that under the circumstances of this case that to attribute the knowledge of Mr. Taylor to Mr. Anderson in this case is too far removed for consideration of a six point enhancement for victim-related adjustments when there was no showing that anyone knew that these were officers who were entering the room at the time that the view was obstructed by the shooter, the codefendant in this case, and that he actually shot the young lady who went to the door to answer the door and the bullet apparently went through her and completely exited her body and struck the officer in the chin.
>
> So I - - I would just object to the six point enhancement for a victim-related, the official victim provision in this cause.

(S. Tr. at 64-65.)

The Government countered that Co-Defendant Taylor's trial testimony confirmed that Anderson knew Oslanzi was the police. The Government recited that testimony:

> Now Slick was talking to Trymane and he was telling Trymane that the last time he remembered the white[] guy['s] face [Detective Oslanzi] he said that the last time he seen him that he had - - one of his friends ended up getting drug raided because of that guy, he think [sic] it's the police, he said that guy is the police.

-4-

(S. Tr. at 66.) Taylor had agreed at trial that he was "concerned at the point that the police may be raiding the room after that sale." (S. Tr. at 67.) Taylor also testified that his response was to dispose of everything, but that Defendant, "wasn't thinking about it," and walked out of the room. (S. Tr. at 67.)

The Government argued:

So, Your Honor, we will never know why Trymane Anderson left the room that particular time, but they knew that the individual who just left that room was involved in a drug raid prior to this incident. They had an idea or inkling, at least Mr. Taylor admitted that he thought that the police were going to raid the room after that last sale.

I submit to Your Honor the reason that Trymane Anderson left that room was because he knew that the police were raiding and he just walked away from it. But Albert Taylor and the two females who were in there getting high didn't do that, they stayed. And because he brought the gun to the room, it was his gun that was used to shoot Patricia Walker and Officer Michael Gibbs.

And I submit to the court that any time you take a firearm to a drug transaction it is reasonably foreseeable that somebody might get hurt and that's what happened here.

Although the defendant Mr. Anderson did not pull the trigger, he provided a gun which was used in the shooting of two people, Your Honor, and I think he should be held accountable for that.

(S. Tr. at 67-68.)

Defendant responded that the defendants "didn't know that the officers were coming in, you are still talking about a situation where the first victim, who was one of these young ladies in the room, gets shot while she is opening the door or going to open the door for the police officers. And it's no indication that Mr. Anderson had any knowledge that this was about to go down, he wasn't even thinking about it, he wasn't even in the room."

(S. Tr. at 69-70.) Defendant continued that "to speculate as to why he left the room when he did, there is no basis for that in this record. . . . [T]he government has failed to show that the defendant

-5-

had knowledge or should have had knowledge . . . of these law enforcement officers at the time that this incident took place." (S. Tr. at 70.)

The district court allowed the Government a final word:

> I would just submit to the court that there is no requirement that the government prove that the defendant, in fact, knew that these were law enforcement. I think what's required of the government is showing this reasonable foreseeable activity and I submit to the court that it is.
>
> And I did note a hypothetical or at least one of the commentary notes example of this in which a robbery was taking place and one of the robbers actually committed an assault upon one of the victims. And the - - and the note seemed to suggest that, because it's reasonably foreseeable in light of the nature of the offense, that that individual is just as culpable as the individual who commits the assault.
>
> And I submit to the court that this is exactly what we have before the court, that it's reasonably foreseeable and because of that he should be held accountable.

(S. Tr. at 71.)

The district court ruled as follows:

> On the date in question the record reflects that at some point in time officers appeared at the door, the door was opened, Mr. Anderson was already outside, Mr. Taylor was attempting to hide the weapon. The weapon at some point discharged and the female and an officer were shot.
>
> [The Government] has read for the record the testimony of the transcript of testimony of Mr. Taylor talking about discussions regarding the person who appeared to allegedly buy drugs and whether or not that person was law enforcement and some things that happened immediately ensuing another purchase by this individual.
>
> Whether the parties knew the individual was a law enforcement or not, they were engaged in activity where it was reasonably foreseeable that law enforcement would at some point in time potentially come in to - - to arrest parties. The parties who were engaged in unlawful activities could reasonably expect that law enforcement would be interested in that and could possibly make arrests.
>
> Whether they knew or not, the environment was created there with the drugs and the guns that made it, as [the Government] said, reasonably foreseeable that there could be a serious [sic] on someone.

When the knock on the door occurred, it was law enforcement. There had been discussion about law enforcement. There was a discharge, the fact that Mr. Anderson was out of the door doesn't make him any less culpable because he was very much involved in this and - - and all of the conduct that was engaged in the room could equally be attributed to Mr. Taylor and to Mr. Anderson, so the fact that he is outside, and I don't have to speculate about the reason, doesn't make him any less culpable.

So I find that the enhancement is appropriate because he, from everything that the record suggest[s], created that environment that they - - this series of events made possible with the gun being there and the drugs being there and the subsequent injuries that occurred could fairly be attributable to him also.

(S. Tr. at 72-74.)

After rejecting another unrelated objection by Defendant, the district court stated "I'm going to adopt the Presentence Report as my findings for purposes of this hearing and I will move to the sentencing phase." (S. Tr. at 77.)

The district court imposed a six-level official victim enhancement, but did not apply the two-level enhancement for obstruction of justice, which resulted in a new total offense level of 26 and a new advisory Guidelines range of 78-97 months. However, the district court varied downward and imposed a sentence of 60 months as to counts one, two, and three, to be followed by a consecutive 120-month sentence as to count four, resulting in a total of 180 months of imprisonment.

Defendant filed this timely notice of appeal.

## II. Analysis

Defendant contends that the district court committed a procedural error in applying a six-level enhancement pursuant to USSG § 3A1.2(c)(1) because the district court made no express findings that Defendant or Co-Defendant Taylor knew or had reason to believe that Detective Gibbs was a law enforcement officer. The Government agrees that for the enhancement to apply,

Defendant or Co-Defendant Taylor must know or have reason to believe that the individual assaulted was a police officer. However, the Government asserts that the factual findings made by the district court support the conclusion that Defendant and Co-Defendant had the requisite knowledge under USSG § 3A1.2(c)(1).

We review de novo issues involving the interpretation of Sentencing Guidelines provisions. *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006). We review a district court's factual findings in applying the Guidelines for clear error. *Id.*

The enhancement under USSG § 3A1.2(b) applies

[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable[,] . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom[.]

USSG § 3A1.2(c)(1).

The plain language of this provision requires knowledge of law-enforcement status. *See United States v. Mills*, 1 F.3d 414, 423 (6th Cir. 1993) (remanding to the district court because trial court made no finding whether the defendant knew or had reasonable cause to believe the victim was a law enforcement officer); *United States v. Hayes*, 135 F.3d 435, 438 (6th Cir. 1998). The district court erred in equating the requirements of section 3A1.2(b) with the requirements of section 1B1.3, the relevant conduct provision.

Nonetheless, the Government maintains that the district court made factual findings that Defendant and Co-Defendant Taylor knew or had reason to believe that Detective Gibbs was a law enforcement officer. It claims that this finding is supported by the following facts: (1) officers knocked and announced their presence; (2) officers were wearing vests with "POLICE" in large

-8-

letters and their badges were clearly displayed; (3) Patricia Walker, who was inside the room with Co-Defendant Taylor and was also shot, said that she heard the police identify themselves upon entering the room; and (4) Defendant was forewarned that Oslanzi was an undercover cop.

Although these facts, if properly found, *could have supported* a finding that Taylor knew, or had reason to believe that he was firing at law enforcement, and, by virtue of the relevant conduct provision, Anderson "knew or had reason to believe" this too, the district court *did not in fact* make these findings. Instead, as reflected in the quoted passage above, the district court found merely that, based on the environment they created with guns and drugs, it was reasonably foreseeable that the police would come along at some point to make an arrest.

While the district court found that the knock on the door occurred, that it was law enforcement, and that there had been a discussion about law enforcement, these facts standing alone, do not support a finding that either defendant *actually* "knew or had reasonable cause to believe" that the individuals on the other side of the door *at that moment* were indeed the police.

In adopting the PSR, Judge Donald made the factual finding that the officers knocked and announced their presence, and Patricia Walker heard the police identify themselves. (PSR ¶¶ 10, 13) This finding as to what the police said and what Walker heard, however, is insufficient to constitute a finding as to what Taylor heard. As this court stated in *Mills*, "[a]bsent a finding about defendants' knowledge, . . . we are unable to judge the propriety of the [six]-point increase." *Mills*, 1 F.3d at 423.

Such a gap in the record prompted us to remand in *Mills*. There, the defendants were pursued by police after a burglary. Mills lost control of his car and hit the vehicle of an officer who had set up a road block, causing serious injury to the officer. This court reversed the application of

-9-

the enhancement because the officer's cruiser was unmarked, and the officer himself did not know whether he had activated the lights. Moreover, neither the court nor the presentence report discussed the defendants' knowledge. We remanded for findings of fact as to the defendants' knowledge of the officer's law enforcement status. *Id.* at 423. *Cf.United States v. Overton*, 186 F. App'x 607, 611-12 (6th Cir. 2006) (holding that application of the enhancement under USSG § 3A1.2(b) was proper where the district court conducted an evidentiary hearing and made the factual finding that the defendant "'knew that these were police officers'" and that finding was not clearly erroneous); *United States v. Hayes*, 135 F.3d 435, 439 (6th Cir. 1998) (holding that record facts supported the district court's express finding that the defendant knew or should have known that the individuals in the automobiles were police officers; where there was testimony that police jersey said "Police," an officer yelled "Police," and a flickering blue light was placed on the dashboard of an unmarked police vehicle only an arm's length away from the defendant's car); *United States v. Campbell*, No. 98-5143, 178 F.3d 1296 (6th Cir. 1999) (per curiam) (table disposition) (holding that record facts such as the officers' attire and the defendant's behavior supported the district court's conclusion that the defendant knew he had attempted to shoot law enforcement officers); *United States v. Hall*, No. 93-6345, 33 F.3d 55 (6th Cir. 1994) (per curiam) (table disposition) (holding that the enhancement under USSG § 3A1.2(b) was proper where the defendant was holding a weapon at port arms after repeatedly being ordered by the officer to drop the weapon and did not dispute that he knew the victim was an officer).

Because the district court in this case did not make any express finding that Taylor "knew or had reasonable cause to believe" that he was assaulting a police officer on the evening of January 25, 2008, when he fired shots at the door, we are unable to assess whether such conduct was properly

-10-

attributed to Defendant Anderson. Although the PSR contains facts that could support such a finding, they must be explicitly found by the factfinder. Given this factual gap, the district court's application of the six-level enhancement was improper.

For this reason, the district court's decision was procedurally unreasonable. As a result, we must vacate the sentence and remand for further proceedings. *See United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008) (stating that failure to calculate or improperly calculating the Guidelines range is procedural error under *Gall v. United States*, 552 U.S. 38, 51(2007)); *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (stating that in reviewing sentences for procedural unreasonableness, the court must ensure that the district court properly calculated the applicable Guidelines range); *see also Overton*, 186 F. App'x at 611 (stating that calculation of the appropriate Guidelines sentence is the first step in evaluating a sentence for reasonableness). The case is remanded for resentencing on the present record. Upon remand the district court is instructed to make factual findings as to whether Co-Defendant Taylor knew or had reason to know that he was shooting at law enforcement on January 25, 2008, and if so, whether his conduct was reasonably foreseeable by Defendant.

### III. Conclusion

For these reasons, we **VACATE** the district court's application of the six-level enhancement for official victim status and we **REMAND** for further proceedings consistent with this opinion.