*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

JAMES THOMAS MCBRIDE,

> *Defendant-Appellant.*

No. 04-4347

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-00060—George C. Smith, District Judge.

Argued: December 6, 2005

Decided and Filed: January 17, 2006

Before: MARTIN, COLE, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Daniel Allen Brown, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Daniel Allen Brown, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Defendant-Appellant James T. McBride is before us for the second time. In his first appeal, McBride appealed his conviction and sentence for presenting false claims to the Internal Revenue Service, obstruction of justice, and bankruptcy fraud. We reversed his conviction on one count, but affirmed the remaining convictions. We also vacated McBride's sentence and remanded his case for resentencing so that the district court could determine whether, under the relevant application note and provision of the United States Sentencing Guidelines ("Guidelines"), a downward departure may be warranted because of the possibility that the court's loss determination overstates the severity of the offense. At resentencing, the district court announced two identical sentences: one under the Guidelines, and one that treated the Guidelines as advisory. McBride appeals his sentence, arguing that the district court violated his Sixth Amendment rights in light of *United States v. Booker*, -- U.S. --, 125 S.Ct. 738 (2005), and that the alternative sentence is unreasonable. For the reasons that follow, we AFFIRM the sentence imposed by the district court.

1

**I.**

Defendant James T. McBride's girlfriend, Katina Kefalos, was convicted by a jury of evading federal income taxes in proceedings before District Judge Algenon L. Marbley. *See United States v. McBride*, 362 F.3d 360, 363 (6th Cir. 2004). Also a tax protestor, McBride sent a check for $12,990.67 to IRS agent Margarent Nypaver during the course of the trial, in purported satisfaction of Kefalos's tax obligations. The check was drawn from an account he had closed one year earlier. McBride then submitted checks from the same closed account to the Franklin County Treasurer's Office, purportedly to pay the real estate taxes for the first half of 2001 on the residences of Judge Marbley, Kefalos's attorneys David Axelrod and Terry Sherman, and Nypaver, and immediately received statements from the Treasurer's Office confirming that he had paid these real estate taxes. McBride presented these statements as evidence of his creditor status when he filed involuntary bankruptcy petitions against Judge Marbley, Axelrod, Sherman, and Nypaver. He paid the $200 filing fee for each involuntary bankruptcy petition with dishonored checks drawn on the closed account.

McBride was indicted by a federal grand jury on six counts: presenting a false claim against the government in violation of 18 U.S.C. § 287, obstruction of justice in violation of 18 U.S.C. § 1503, obstructing the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a), and three counts of bankruptcy fraud in violation of 18 U.S.C. § 157. A jury convicted McBride of all six counts on May 23, 2002. The district court thereafter determined that McBride should be sentenced under offense level 22, Criminal History Category IV. The court then sentenced McBride to 78 months of imprisonment on Count 2; 60 months on Counts 1, 4, 5, and 6; and 36 months on Count 3, all to be served concurrently. One of the factors in determining McBride's sentence was the amount of the intended loss of the aforementioned victims. The presentence report indicated that the intended loss of McBride's actions, including the bad checks and the total value of the residences of Judge Marbley, Axelrod, Sherman, and Nypaver, was $1,139,760.67, which required an increase in the base offense level of 16. Out of an abundance of caution, the district court estimated the value of the intended loss at $970,865.17, thus increasing McBride's offense level by only 14. The actual loss was limited to $800, which was the sum of the checks McBride wrote to the bankruptcy court to satisfy the $200 filing fee for each of the four involuntary bankruptcy petitions.

Although this Court affirmed McBride's conviction with regards to Counts 2-6, it reversed his conviction for Count 1, the conviction for presenting a false claim to the government. Furthermore, this Court vacated McBride's sentence, and remanded his case to the district court for resentencing because of the disparity between the intended loss and the actual loss. Based on the sentencing transcript, this Court determined that the district court believed that it could not consider the "economic reality principle," which allows for downward departures when the amount of an intended loss seriously overstates the severity of the offense. This Court determined that the district court's belief that the disparity between the actual and intended loss was not grounds for a downward departure was plain error, and remanded to the district court for resentencing.

A resentencing hearing was conducted in October, 2004. The Government prepared a sentencing memorandum, to which McBride objected based on *Blakely v. Washington*, 542 U.S. 296 (2004). The district court found that based on his offense level and his criminal history category, the applicable guideline range was 77 to 96 months on Count 2, 36 months on Count 3, and 60 months on Counts 4-6. Following the Sentencing Guidelines, the district court announced a sentence of 78 months: 78 months for Count 2, 36 months for Count 3, and 60 months for Counts 4-6, to run concurrently. Pursuant to this Court's instructions after McBride's initial appeal, the district court also explicitly considered and rejected granting a downward departure based on the economic reality principle. Additionally, the district court announced a sentence pursuant to 18 U.S.C. § 3553(a) that treated the Guidelines as advisory, which was identical to the sentence

announced under the Guidelines. The district court entered its order sentencing McBride to 78 months on October 18, 2004 and McBride timely appealed.

## II.

McBride argues that in applying the Guidelines, the district court violated his Sixth Amendment rights. He argues that the district court unconstitutionally made factual findings to enhance McBride's sentence under the Guidelines. McBride objected to his sentence prior to resentencing, based on the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). When a defendant preserves a potential *Blakely* error, this Court reviews for harmless error. *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005).

Although the court did make factual findings of the kind prohibited by *United States v. Booker*, -- U.S. --, 125 S.Ct. 738 (2005), the district court also gave McBride an alternative sentence in anticipation of *Booker*. This Court has held that when a district court articulates an identical alternative sentence in addition to a sentence under the guidelines, the harmlessness of the *Booker* error is established. *See United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005); *United States v. Bailey*, No. 04-6181, 2005 WL 2739083, at *2 (6th Cir. 2005); *United v. Strbac*, No. 04-4158, 129 Fed. Appx. 235, 257 (6th Cir. 2005). Because the district court articulated an identical alternative sentence, the *Booker* error is harmless.

## III.

Even though a *Booker* violation is rendered harmless by a district court's articulation of an identical alternate sentence, this Court must still determine if that alternate sentence is reasonable. *Booker*, 125 S.Ct. at 766.

McBride argues that his sentence is unreasonable because the district court did not properly consider the sentencing factors articulated in 18 U.S.C. § 3353(a). Section 3553(a) sets forth the factors a judge must consider in sentencing a defendant. McBride argues that the district court's sentence is unreasonable because the district court considered some of the factors, referred to others, and simply ignored the remaining ones. McBride further argues that his sentence is unreasonable because the district court did not reasonably consider the economic reality principle.

This Court has held that although a sentence should reflect the considerations listed in § 3553(a), "there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers." *Chandler*, 419 F.3d at 488 (quoting *United States v. Washington*, 147 F.3d 490, 491-92 (6th Cir. 1998)) (internal citations omitted). However, the district court's opinion should be sufficiently detailed to reflect the considerations listed in § 3553(a). *Id.*

Before turning to the facts of this case, we pause to comment on the state of the law since *Booker*. Achieving agreement between the circuit courts and within each circuit on post-*Booker* issues has, unfortunately, been like trying to herd bullfrogs into a wheelbarrow. The courts have particularly struggled to — and often failed at — properly applying the remedial portion of *Booker* along with the remedy. One murky area is what to do about the pre-*Booker* concept of "departures" under the Guidelines now that the Guidelines are merely advisory. This Circuit is not exempt from causing confusion in this area. One particular source of that confusion is the Court's recent opinion in *United States v. Puckett*, 422 F.3d 340 (6th Cir. 2005); *see also United States v. Melendez-Torres*, -- F.3d -- (1st Cir. 2005). Therefore, we take this opportunity to clarify the scope of our review of sentences in light of the potential ambiguities resultant from *Puckett*.

To start, we address what *Puckett* does and does not stand for. Our reading of *Puckett* is that the district court denied a motion for a Guidelines departure provided for under Chapter 5 of the Sentencing Guidelines. The Court then framed the question as whether we may review "the district

court's decision to *deny* a downward departure" under Chapter 5 of the Guidelines. *Id.* at 344. Reciting our pre-*Booker* holdings, specifically *United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002), the Court in *Puckett* held that the principle that "refusals to grant a downward departure [under Chapter 5] are unreviewable," *Puckett*, 422 F.3d at 345, survived *Booker* and we must continue to abide by it. Thus, according to that decision, "we shall not review decisions of a district court not to downward depart [under Chapter 5] unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *Id.* (quoting *Stewart*, 306 F.3d at 329). *Puckett*, despite its broad language, however, deals with only a small portion of our review of a defendant's sentence. It does not govern or alter our ability to review the overall reasonableness of sentences.[1]

In *Puckett*, after concluding that it did not have the authority to review the district court's decision not to depart downward, the Court affirmed the defendant's sentence. This was apparently because, in the panel majority's opinion, Puckett did not correctly argue for reasonableness review. Instead, the majority found that Puckett "argues for review of denials of downward departures, but he does not advocate the reasonableness review suggested by *Booker*." *Id.* at 345. Instead of arguing for reasonableness review, Puckett argued that we should "apply a clearly erroneous standard to the denial of a downward departure" under Chapter 5K. *Id.* Based on *Stewart*, the Court rejected Puckett's argument. The dissent, however, would have remanded for resentencing. The point of contention between the majority and dissent over whether resentencing was appropriate in this case was over whether Puckett properly argued for reasonableness review and whether raising the issue in a reply brief was sufficient.[2]

The dissent in *Puckett* also noted that — absent the dispute over whether the issue was properly raised — nothing "preclude[s] reasonableness review of aspects of the sentencing determination other than whether a departure is permitted (and to the extent to which a departure is permitted) under the provisions of USSG Chapter 5." *Id.* at 346 (Rogers, J., dissenting) (citing *United States v. Justin Jones*, 417 F.3d 547, 551 n.3 (6th Cir. 2005)). This was not disputed by the majority.

In light of the changing landscape of our review and approach post-*Booker*, *Puckett* in reality precludes our review of only a small portion of the overall sentencing determination. Before *Booker*, we reviewed the district court's sentence to determine whether it properly calculated and applied the Guidelines. Now when a district court imposes and we review a sentence for reasonableness, the focal point is on 18 U.S.C. § 3553(a).[3] In section 3553(a), there are numerous

---

[1]Instead, *Puckett* addresses our review of the Guidelines calculation, which under *Booker*, and as discussed *infra*, is both advisory and merely one factor to be considered in the context of section 3553(a).

[2]The dissent wrote: "Generally, review of an issue mentioned for the first time in a reply brief is precluded. In light of the intervening change in law, requesting reasonableness review in the reply brief should be sufficient, where, in this case, the original briefs were filed before the Supreme Court decided *Booker*." *Puckett*, 422 F.3d at 346 (Rogers, J., dissenting). The dissent cited this Court's earlier decision in *United States v. Webb*, 403 F.3d 373, 380 n.2 (6th Cir. 2005), this Court's first decision discussing reasonableness after *Booker*, where the Court held that raising the issue in a reply brief is sufficient. To the extent that *Puckett* conflicts with *Webb* in this respect, we note that *Webb* was filed first and is binding on subsequent panels.

[3]While the district court need not explicitly reference each of the section 3553(a) factors, there must still be sufficient evidence in the record to affirmatively demonstrate the court's consideration of them. *United States v. Webb*, 403 F.3d 373 (6th Cir. 2005). In *Webb* we held that there are both *substantive* and *procedural* components to our reasonableness review. *Webb*, 403 F.3d at 383-85. A district court's failure to explicitly consider the section 3553(a) factors without other evidence in the record demonstrating that they were thoroughly considered by the district court would result in a procedurally unreasonable sentencing determination requiring us to vacate and remand for resentencing. Moreover, that a district court need not use the magic words, "I specifically considered 3553(a)(1) ..." is not a license for district courts to sentence without developing a sufficient record for appellate courts to review. To the extent that

factors for a court to consider, and under *Booker*'s remedial holding, the Sentencing Guideline range is one of those factors. That is, while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant. *See e.g.*, *United States v. Webb*, 403 F.3d 373 (6th Cir. 2005) ("[W]hile a district court must still give some consideration to the appropriate Guidelines range when making a sentencing determination, a court is no longer bound by the applicable Guidelines."). To effectuate the Supreme Court's mandate, district courts are still required to *consider* the appropriate Guideline sentencing range. Within this Guideline calculation is the determination of whether a Chapter 5 departure is appropriate. The district court's decision to deny a Guideline-based departure in this part of the calculation, *Puckett* holds, is not reviewable by this Court so long as the district court was aware of and understood its discretion to make such a Guideline-based departure. *Puckett*, 422 F.3d at 345. This, however, is not the end of the sentencing inquiry; rather, it is just the beginning. *See e.g.*, *United States v. Mickelson*, No. 05-2324, -- F.3d -- (8th Cir. Jan. 6, 2006) ("As we recognized in *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir. 2005), calculation of the appropriate guideline sentence is only the first step in sentencing decisions under *Booker*, for the court must also consider the § 3553(a) factors before making its ultimate decision.").

Once the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix. Considering, as *Booker* requires, all of the relevant section 3553(a) factors, including the Guideline range, the district court then imposes a sentence. This sentence we may — and *Booker* requires us to — review for reasonableness. *See Webb*, 403 F.3d at 383-85 (discussing reasonableness review). This is so, even if the district court rejects a defendant's claim for a lesser sentence in light of the section 3553(a) factors.[4]

This is a major change in the law due to the now-advisory Guidelines. Under the mandatory Guideline system, a defendant's only hope of a lesser sentence was a Guideline-based downward departure. *Stewart* precluded us from reviewing a denial of the downward departure and thereby strictly circumscribed our review of certain sentencing determinations. Now, because the Guidelines are no longer mandatory and the district court need only consider them along with its analysis of the section 3553(a) factors, the decision to deny a Guidelines-based downward departure is a smaller factor in the sentencing calculus. Furthermore, many of the very factors that used to be grounds for a departure under the Guidelines are now considered by the district court — with greater latitude — under section 3553(a). *See e.g., Mickelson*, No. 05-2324, at *8 ("In contrast to the sentencing scheme before *Booker* when a sentence outside the mandatory guideline range was permitted only on very limited grounds, there are now more sentencing variables.").

Thus, *Puckett* simply precludes our review of that narrow determination of a denial of a Chapter 5 Guideline departure within the context of the Guideline calculation.[5] It does not prevent our review of a defendant's claim that his sentence is excessive based on the district court's unreasonable analysis of the section 3553(a) factors in their totality.

---

a district court *does* specifically cite to the section 3553(a) factors, our review is that much easier, and we can more precisely consider the district court's reasoning. To the extent that the court hides its reasoning or requires us to ponder and speculate, the more likely we are to find procedural unreasonableness in the court's sentencing determination.

[4] This review did not occur in *Puckett*, of course, because the majority determined that the issue was not properly raised. *Puckett*, 422 F.3d at 345.

[5] It is perhaps helpful to think of Chapter 5 departures, which *Puckett* addresses, as Guideline departures. In turn, sentences lower than the Guidelines recommendation based on section 3553(a) factors, can be thought of as Non-Guideline departures, which are fully reviewable by us for reasonableness.

We further recognize that there is not complete agreement among the courts over whether Guideline-based "departures" truly even exist at this point. The Seventh Circuit has expressly stated that "framing of the issue as one about 'departures' has been rendered obsolete . . . It is now clear that after *Booker* what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from guidelines that were then mandatory." *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005); *see also United States v. Arnaout*, — F.3d —, 2005 WL 3242213 (7th Cir. 2005); *United States v. Wing*, No. 05-2263, -- F.3d --, *16-17 (8th Cir. Jan. 6, 2006) (Loken, C.J., concurring) (agreeing with Seventh Circuit's concept of "departures" and stating that "many departure rules under the mandatory guidelines have little or no practical impact on sentencing under the post-*Booker* advisory guidelines."). The assertion that departures are obsolete has an element of truth — for there is now no mandatory guideline range from which to depart — and does properly shift the focus of our review to reasonableness. Nevertheless, the appropriate Guideline range — including Guideline departures — must still be considered. Because Guideline "departures" are a part of the appropriate Guideline range calculation, we believe that Guideline departures are still a relevant consideration for determining the appropriate Guideline sentence. This Guideline sentence is then considered in the context of the section 3553(a) factors.

*Puckett* stands for the proposition that we cannot review a district court's decision to deny a Chapter 5 Guideline departure in calculating the Guideline sentence. We must review, however, for reasonableness, the district court's consideration of the Guideline sentence in the context of the other section 3553(a) factors. To interpret *Puckett* more broadly — that is, to preclude our review of a district court's decision not to sentence below the applicable Guideline range — would run completely contrary to *Booker*'s mandate and is unreconcilable with reasonableness review and this Circuit's post-*Booker* case law. Therefore, we interpret *Puckett* to comply with the Supreme Court's mandate.

## IV.

We now review McBride's sentence for reasonableness consistent with *Webb*. This includes review of the district court's decision not to impose a lower sentence based on the economic reality principle pursuant to its consideration of factors under section 3553(a). Upon resentencing, the district court properly considered the economic reality principle as a basis for downward departure. That court, however, declined to revise its original sentence, because it found that a downward departure would understate McBride's criminal history, and because McBride had recently made clear to the district court that he intends to "disrupt the proper functioning of the government by whatever means he may employ." The court concluded that these considerations, "both of which would support upward departures as noted by the Probation Officer, outweigh the need to downward depart."

Here, the district court specifically set forth its treatment of substantially all the factors set forth in section 3553(a) in sentencing McBride. The district court discussed the nature and circumstances of the offense, and McBride's history and characteristics. *See* § 3353(a)(1). In announcing the alternative sentence, the district court discussed the sentence as a means to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* § 3553(a)(2)(A). The court noted that the sentence would be an adequate deterrent to those who may seek to mimic McBride's conduct in the future. *See* § 3553(a)(2)(B). The court discussed the likelihood that McBride would commit future crimes, *See* § 3553(a)(2)(C), and acknowledged and rejected other forms of sentencing that were available. *See* § 3553(a)(3). Finally, the court considered a lesser sentence based on the economic reality principle.

This Court generally remands to the district court when the lower court fails to mention section 3553(a) or provide sufficient information with regard to the sentence to permit a

reasonableness review.  *Webb*, 403 F.3d at 383.  *See, e.g., United States v. Beck*, No. 04-6494, 2005 WL 2108332, at *3 (6th Cir. 2005).  Here, the district court both mentioned section 3553(a) and actually considered the individual factors contained therein.  In sum, we have reviewed the sentencing proceedings and, pursuant to *Webb*, find that the district court's procedural and substantive determinations were reasonable.  We therefore find that McBride's sentence was reasonable and accordingly affirm.