# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2109

_____

Jose Luis Mendez-Gomez, also known as Julio Cesar Estrada-Escobar, also known as Jose Aul Torres-Santiago

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 13, 2019
Filed: June 27, 2019

_____

Before SHEPHERD, ARNOLD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jose Luis Mendez-Gomez, a citizen of Guatemala, petitions for review of (1) the Department of Homeland Security's (DHS) reinstatement of a prior order for his removal, and (2) a Board of Immigration Appeals (BIA) decision that affirmed an immigration judge's (IJ) denial of his applications for withholding of removal and

deferral of removal under the Convention Against Torture (CAT) in withholding-only proceedings.[1]  Having jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

I.

Mendez-Gomez, a Guatemalan citizen, unlawfully entered the United States in December 2002.  In August 2003, after Mendez-Gomez was convicted of making a false claim of United States citizenship in violation of 18 U.S.C. § 911, an IJ issued a final order of removal.  Mendez-Gomez was removed from the United States.  He reentered the United States in late 2003, using a fraudulent lawful permanent resident card, or "green card," to obtain entry through a checkpoint just inside the United States-Mexico border.

In July 2017, an Otter Tail County, Minnesota police deputy stopped Mendez-Gomez's vehicle for an equipment violation.  When Mendez-Gomez produced only a Guatemalan passport as identification, the deputy requested immigration assistance.  A Border Patrol agent telephoned the deputy and spoke to Mendez-Gomez, who admitted that he had entered the United States roughly 16 years prior and had no documents allowing him to legally remain in the country.  Mendez-Gomez claimed he had never been arrested by immigration officials before, but he presented no documentation allowing him to enter or remain in the United States and was taken into immigration custody.

Upon entering Mendez-Gomez into the immigration database, Border Patrol agents discovered his prior order of removal.  Mendez-Gomez then made a conclusory statement about legally entering the United States, refused to answer any

---

[1]Withholding-only proceedings are "limited to a determination of whether the alien is eligible for withholding or deferral of removal.  During such proceedings, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility [and] deportability . . . ." 8 C.F.R. § 1208.2(c)(3)(i).

more questions or sign any immigration documents, and requested to speak with his attorney. Subsequently, DHS filed a Notice of Intent/Decision to Reinstate regarding Mendez-Gomez's prior removal order. Mendez-Gomez checked a box on that form indicating he wished to make a statement contesting the reinstatement, but there is nothing in the administrative record showing that he did so.

After Mendez-Gomez indicated that he feared return to Guatemala, the United States Citizenship and Immigration Services conducted a reasonable fear hearing. At this hearing, Mendez-Gomez testified that, in 2001, he borrowed money from a loan shark named Don Lucho to pay for his mother's lung surgery. Mendez-Gomez has not repaid the loan. Although he has never been attacked because of the unpaid debt, he testified that two armed men appeared at a soccer game in the summer of 2001 and asked whether members of his family were in attendance and that the men were looking for him because he had not repaid the loan. Mendez-Gomez believes that the men would have tortured or killed him for failing to pay the money back. He further believes that three of his cousins were murdered for being with him at the soccer field that day. Mendez-Gomez's father and other family members in Guatemala received telephone calls as late as 2016 threatening Mendez-Gomez's life due to the unpaid loan. Mendez-Gomez has never reported any of these incidents to the police because he is afraid they may be corrupt or subject to bribes.

The asylum officer denied Mendez-Gomez's reasonable fear application. An IJ then vacated the asylum officer's determination and placed Mendez-Gomez into withholding-only proceedings for review of his applications for withholding of removal and CAT review. The IJ ultimately denied Mendez-Gomez's applications. The BIA upheld the IJ's decision, finding that Mendez-Gomez failed to present any argument that he had been improperly placed in reinstatement proceedings, failed to present meaningful argument on his CAT claim, and failed to show the Guatemalan government was unable or unwilling to protect him. Mendez-Gomez now petitions this Court for review of the BIA's decision.

II.

We first address Mendez-Gomez's claim that DHS violated his due process rights by improperly reinstating his prior removal order. "For some time, the law has provided that an order for removing an alien present unlawfully may be reinstated if he leaves and unlawfully enters again." Fernandez-Vargas v. Gonzales, 548 U.S. 30, 33 (2006). In a challenge to reinstatement of a prior final order of removal, our jurisdiction is limited to the reinstatement itself and we may not reopen or review the prior order. 8 U.S.C. § 1231(a)(5).

"We consistently have required issue exhaustion in post-[Illegal Immigration Reform and Immigrant Responsibility Act of 1996] immigration cases, and referred to the rule as 'jurisdictional' . . . ." Etchu-Njang v. Gonzales, 403 F.3d 577, 583 (8th Cir. 2005). Thus, failure to raise an issue before the administrative agency precludes a petitioner from raising it on appeal. See Escoto-Castillo v. Napolitano, 658 F.3d 864, 866 (8th Cir. 2011) ("We have repeatedly held that failure to exhaust administrative immigration remedies precludes merits review of the unexhausted issue.").

Mendez-Gomez argues that DHS violated his due process rights by reinstating the prior order of removal against him when he lawfully reentered the United States. See 8 U.S.C. § 1231(a)(5) (allowing reinstatement of a prior order of removal when an alien reenters the United States illegally). He contends that his reentry was lawful because a border agent at a second checkpoint 20 to 60 miles within the United States waved him through. However, Mendez-Gomez told immigration officials over the telephone at his initial detention that he was unlawfully present in the United States, admitted that he reentered the United States within four months of being deported, and never effectively contested the unlawful nature of his reentry during the reinstatement process.

-4-

Furthermore, all the evidence Mendez-Gomez now relies on was not submitted until he entered withholding-only proceedings before the IJ. Withholding-only proceedings solely review an alien's applications for protection; they do not address whether DHS properly reinstated a prior removal order. See 8 C.F.R. § 1208.2(c)(3)(i). The decision to reinstate a prior removal order lies with DHS, and Mendez-Gomez failed to raise this issue to DHS before the agency reinstated his prior removal order. We therefore lack jurisdiction to review the reinstatement of the prior removal order, as the issue was not exhausted. See Escoto-Castillo, 658 F.3d at 866.

### III.

Mendez-Gomez also contends that DHS violated his due process rights by continuing to interrogate him without his attorney present after he requested an attorney. "[T]o succeed on a due process claim, an alien must prove that he was actually prejudiced by the lack of process afforded to him." Briones-Sanchez v. Heinauer, 319 F.3d 324, 327 (8th Cir. 2003). To show actual prejudice in a reinstatement proceeding, he must show that, but for the alleged due process violation, the government "would not have reinstated his removal order." Id.

The only issues in a reinstatement proceeding are "the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered." Ochoa-Carrillo v. Gonzales, 437 F.3d 842, 847 (8th Cir. 2006) (quoting Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 867 (8th Cir. 2002)). Because Mendez-Gomez concedes his identity and the existence of the prior removal order, he must show he lawfully reentered the United States to show prejudice. However, Mendez-Gomez cannot do so as a matter of law because he did not have the Attorney General's consent to reenter the United States within ten years of his removal, as required by 8 U.S.C. § 1182(a)(9)(A)(ii)-(iii). Because "the presence of an attorney . . . would [not] have changed [Mendez-Gomez]'s status as an alien who illegally reentered the United States following the entry of a removal order against him[,]" see Gomez-

-5-

Olvera v. Napolitano, 451 F. App'x 611, 614 (8th Cir. 2012) (per curiam), we conclude that he has failed to show prejudice and cannot succeed on his due process claim.

IV.

Mendez-Gomez further argues that, even if DHS properly reinstated the prior order of removal, the IJ and the BIA improperly determined he was ineligible for withholding of removal or protection under CAT.[2] We review denial of an application for withholding of removal or CAT protection under "the deferential substantial evidence standard." Osonowo v. Mukasey, 521 F.3d 922, 927 (8th Cir. 2008). "Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006). We may only grant relief if the evidence in the record is "so compelling that no reasonable factfinder could fail to find in favor of the petitioner." Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005).

To qualify for withholding of removal, an applicant must show a "clear probability," see INS v. Stevic, 467 U.S. 407, 430 (1984), that his "life or freedom would be threatened in [the potential country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Similarly, an applicant for CAT protection must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Mervil v. Lynch, 813 F.3d 1108, 1110 (8th Cir. 2018). If the

---

[2]While reinstatement of a prior order of removal prevents an alien from seeking "relief," such as asylum, see 8 U.S.C. § 1231(a)(5), withholding of removal and protection under CAT are considered "protection," not relief, and are thus not barred. See Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999) (background information to interim rule).

applicant fears such harm from private actors, he must show that the government of the proposed country of removal is "unable or unwilling to control" those actors. De Castro-Gutierrez v. Holder, 713 F.3d 375, 380 (8th Cir. 2013).

In order to qualify for withholding of removal, therefore, Mendez-Gomez must show that the Guatemalan government would be "unable or unwilling" to protect him from Don Lucho. 8 U.S.C. § 1231(b)(3). However, the IJ found that Mendez-Gomez failed to make this showing, and Mendez-Gomez did not challenge that finding before the BIA. Mendez-Gomez thus failed to exhaust his administrative remedies with respect to this issue. See Ateka v. Ashcroft, 384 F.3d 954, 957 (8th Cir. 2004) ("If a petitioner fails to raise a particular issue when he appeals to the Board and has not presented the Board with the need or opportunity to address that issue, the petitioner has not exhausted administrative remedies with respect to it.").

Similarly, Mendez-Gomez failed to offer any meaningful argument to the BIA regarding his CAT claim. See Matter of R-A-M, 25 I. & N. Dec. 657, 658 n.2 (BIA 2012) (holding that a claim is waived if the alien fails to raise it before the BIA). Mendez-Gomez thus also failed to exhaust his administrative remedies with respect to his CAT claim. We conclude that these unexhausted issues are "not properly before us" and we decline to address them. See Ateka, 384 F.3d at 957.

V.

We deny Mendez-Gomez's petition.

_____