NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0082n.06

No. 19-5890

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 09, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| TELLY TERRELL BYRD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |

BEFORE: SILER, WHITE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Telly Terrell Byrd pleaded guilty to a charge of aiding and abetting a bank robbery in 2011 and was sentenced to 57 months' incarceration followed by two years' supervised release. *United States v. Byrd*, 689 F.3d 636, 638–39 (6th Cir. 2012). Near the end of his supervised release term, the probation office asked the district court to revoke it after Byrd was convicted of two misdemeanors. The district court revoked Byrd's supervised release and imposed the statutory maximum of two years' incarceration (with no additional supervised release), doubling the high end of Byrd's Guidelines range. During the revocation hearing, the district court mainly, if not exclusively, discussed its view of Byrd's conduct underlying his misdemeanor convictions when explaining the upward departure.

Byrd now appeals both the procedural and substantive reasonableness of his sentence for violation of supervised release on the grounds that the district court did not consider the relevant factors delineated in 18 U.S.C. § 3553(a) and assigned unreasonable weight to the conduct

underlying his misdemeanor convictions, rendering the sentence greater than necessary to comply with § 3553(a)'s purposes. We **VACATE** the district court's order revoking Byrd's supervised release and **REMAND** for resentencing.

## I. BACKGROUND

On June 20, 2011, Byrd pleaded guilty to a charge of aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2, 2113(a). *Byrd*, 689 F.3d at 638. He was convicted of two misdemeanor counts in state court stemming from his role as the driver in an armed robbery; the factual basis for his *Alford* plea stated that his accomplices had entered a business and shot someone inside. The district court sentenced him to 57 months' incarceration, at the low end of his Guidelines range, followed by two years of supervised release. He appealed, and we affirmed his sentence. *Id.* Byrd was released from custody on May 13, 2015.

On April 28, 2017, Byrd's federal probation officer, Todd Mousty, filed a petition for summons on probation and supervised release. The petition declared that on June 29, 2016, while Byrd was on federal supervised release, he had been indicted in state court on two counts of attempted murder and two counts of complicity to first degree assault, all felonies. It stated that Byrd had posted bond on February 8, 2017 and had been confined to his home since then. The petition also noted that Byrd had failed to report or respond to voicemails and text messages from the probation officer.

The district court held a revocation hearing on July 25, 2019. Neither Byrd nor the Government submitted written briefing prior to the hearing, and the district court did not request any. At the hearing, Byrd and his counsel explained that he had been convicted in state court of two counts of second-degree wanton endangerment—a misdemeanor—after entering an *Alford* plea on June 19, 2019. He had served over seven months in jail (explaining his failure to report)

and had been confined to his home for a year, with neither term credited to his misdemeanor sentence.

The district court then stated:

> I mean, it sounds very benign to say *Alford* plea to a misdemeanor offense, but if what Mr. Byrd did was drop three people off at a business and the three people that he dropped off went in and shot a man seven times, that doesn't sound like a benign incident. It doesn't sound like somebody maybe swerved their car, you know, in a crowded intersection. It really sounds like something that's much more consistent with the bank robbery by force or violence, which was the initial charge.

Next, the Government called Mousty as a witness, and he testified that the original state-court indictment charged Byrd with causing "serious physical injury" to a worker. Mousty also said that police told him that the worker had been shot seven times and that someone else had been shot as well. The Government read the factual basis for Byrd's *Alford* plea into the record. It stated that on January 11, 2016, Byrd had driven three people to a business in Louisville, which they entered, fired shots in an open area with workers present, and then left in Byrd's car. Byrd later argued that the offense of which he was actually convicted did not involve intentional conduct. Byrd further contended that the state-court parties were best situated, with all of the facts before them, to determine an appropriate sentence: the state-court prosecutor believed the misdemeanor was an appropriate resolution given Byrd's conduct, and the state-court judge accepted the plea.

After Byrd did not object to the Guidelines calculation, the Government requested a sentence at the top of Byrd's Guidelines range of six to twelve months' incarceration. Byrd, in turn, requested that his time on home confinement be credited toward any sentence for violation of supervised release. The district court stated that it "could impose an additional period of supervision" to any incarceration.

The district court decided to impose the statutory maximum of 24 months' incarceration.

*See* 18 U.S.C. § 3583(e)(3).  It explained its reasoning as follows:

> Well, here's my thought process:  [a]nd that is that it's not this court's job, as [defense counsel] put it, to enforce the wanton endangerment charge, the state charge, but it is this court's job to enforce the conditions of supervised release.
>
> Mr. Byrd served time for a violent offense of bank robbery.  And then while he was on federal release, supervised release, as I understand it, he has admitted, he pled guilty to driving these individuals to a place of business.  They got out of his car.  They went inside and shot somebody seven times.  They came back out and got in his car and he drove away.  That to me is outrageous.  It really is.
>
> And I understand the guideline range is six to 12 months, but I believe the appropriate thing in this instance is to sentence Mr. Byrd to the maximum sentence that I'm able to do and that's what I'm going to do.  I'm going to sentence him to two years in prison.
>
> I think this is an outrageous amount of conduct to be engaged in by someone who is supposed to be reporting and complying with the conditions of supervision that were handed down by [the previously assigned judge] in this case.  And it sounds to me like Mr. Byrd just completely flouted that.  He acted as though he were under no restriction, not only from the federal courts, but society at large. And, again, this is the most outrageous behavior I've seen from any defendant that has been on federal supervision.  And I think the facts of this case do warrant the maximum sentence, and that's what I'm going to impose.

The district court did not subsequently ask the Government or Byrd if either had any additional objections to the sentence.  On July 29, 2019, the district court issued a one-page order which stated that it had "considered the advisory guidelines and 18 U.S.C. [§] 3553(a)" and "believe[d] the sentence imposed to be sufficient, but not greater than necessary[,] to comply with the purposes set forth in Section 3553(a)(2)."  Byrd timely appealed the district court's order revoking his supervised release and sentencing him to 24 months' incarceration.

## II.   ANALYSIS

### A.     Standard of Review

When the district court "did not clearly ask whether either of the parties had any additional objections at the end of the sentencing hearing," we review unpreserved objections to the order

revoking supervised release for an abuse of discretion rather than for the usual plain error. *United States v. Batti*, 631 F.3d 371, 379 n.2 (6th Cir. 2011) (citing *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)). Generally, review of a sentence imposed following revocation of supervised release applies the same standard as review of a sentence imposed following conviction. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). We "look[] to the entire context and record" when reviewing a district court's sentencing determination. *United States v. Madden*, 515 F.3d 601, 612 (6th Cir. 2008).

In the sentencing context, the abuse of discretion inquiry asks whether the sentence is reasonable. *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015). "Sentences must be both procedurally and substantively reasonable." *Id.*; *see generally Gall v. United States*, 552 U.S. 38, 51 (2007). Sentences within the Guidelines range, including those imposed after revocation of supervised release, are presumed to be reasonable. *United States v. Melton*, 782 F.3d 306, 313 (6th Cir. 2015); *see also Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018) ("When a judge applies a sentence within the Guidelines range, he or she often does not need to provide a lengthy explanation."). But sentences outside the Guidelines range are not presumed to be reasonable, *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009), though they are also not presumed to be unreasonable, *United States v. Johnson*, 640 F.3d 195, 202 (6th Cir. 2011).

## B. Procedural Reasonableness

Procedural reasonableness review involves three steps. *Bolds*, 511 F.3d at 579. "First, we must ensure that the district court 'correctly calculat[ed] the applicable Guidelines range,'" the "'starting point and initial benchmark' of its sentencing analysis." *Id.* (alteration in original) (quoting *Gall*, 552 U.S. at 49). "[O]ur second task is to ensure that the district judge gave 'both parties the opportunity to argue for whatever sentence they deem appropriate' and then 'considered

all of the § 3553(a) factors to determine whether they support the sentence requested by [each] party.'" *Id.* at 579–80 (second alteration in original) (quoting *Gall*, 552 U.S. at 49–50). "[O]ur final task is to ensure that the district court has 'adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.* at 580 (second alteration in original) (quoting *Gall*, 552 U.S. at 50). Overall, for a sentence to be procedurally reasonable, the district court must not have committed any "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,[1] selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

Only the third step is at issue in this case. Byrd argues that the district court failed to adequately explain its chosen sentence. The general rule is that the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 50. This involves considering the § 3553(a) factors. "Explicit reference to the § 3553(a) factors is perhaps the easiest way for the district court to demonstrate that it has considered the factors, but such recitation is not required by statute or by this circuit's opinions." *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007). Still, "there must be . . . sufficient evidence in the record to affirmatively demonstrate the court's consideration" of the

---

[1] The § 3553(a) factors relevant here are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,] . . . to afford adequate deterrence to criminal conduct[,] . . . to protect the public from further crimes of the defendant[,] and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established for[,] in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission"; (5) "any pertinent policy statement . . . issued by the Sentencing Commission"; and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

§ 3553(a) factors, even though it "need not explicitly reference each of [them]." *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006). But if the district court does not explicitly mention them, and there is no "evidence in the record demonstrating that they were thoroughly considered," then we will find "a procedurally unreasonable sentencing determination requiring us to vacate and remand for resentencing." *Id.* Even though "something less than a factor-by-factor recitation is acceptable," "something more than a simple and conclusory judicial assertion that the court has considered [the factors] is essential." *United States v. Ferguson*, 518 F. App'x 458, 467 (6th Cir. 2013); *see also, e.g.*, *United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008). Ultimately, a "sentence is procedurally unreasonable, *inter alia*, where the sentencing judge 'simply selects what the judge deems an appropriate sentence without . . . consideration' of the § 3553(a) factors." *Ferguson*, 518 F. App'x at 463 (alteration in original) (quoting *United States v. Webb,* 403 F.3d 373, 383 (6th Cir. 2005)).

Byrd argues that "the only factor the district court considered was [his] state court conviction—more specifically—the conduct of other persons in that case." The Government responds that the district court "considered," indirectly or "implicitly," a number of other sentencing factors: "the kinds of sentences available," by briefly noting it could impose additional supervised release if Byrd were given credit for time served; "the need to avoid unwarranted sentencing disparities among defendants" and "the nature and circumstances of the offense and [Byrd's] history and characteristics," by discussing the conduct underlying Byrd's misdemeanor conviction and its perceived severity; and the Sentencing Commission's relevant policy statement, by stating that the court's job was to enforce the supervised release conditions rather than sentence for Byrd's misdemeanor.

While the district court need not list each § 3553(a) factor by name, it must illustrate somehow that it did in fact consider each of the factors, offering something more than a "conclusory judicial assertion" as proof. *Ferguson*, 518 F. App'x at 467. Our job is to review what the district court did and why. The district court's job is, in part, to show its work. If this court is left to divine or extrapolate the district court's reasoning after the fact, the district court has not done its job of imposing a procedurally reasonable sentence. *See generally McBride*, 434 F.3d at 476 n.3 ("To the extent that the court hides its reasoning or requires us to ponder and speculate, the more likely we are to find procedural unreasonableness in the court's sentencing determination."); *United States v. Chiolo*, 643 F.3d 177, 185 (6th Cir. 2011) ("[W]henever a district court requires us to infer its bases for rejecting [sentencing] arguments, the district court greatly increases the risk of a remand.").

Here, "the district court never verbalized which of [the § 3553(a)] factors were particularly important to the circumstances of this case or how it selected the sentence in light of these factors" besides a brief mention of § 3553(a)(2) in its written order. *United States v. Penson*, 526 F.3d 331, 338 (6th Cir. 2008). The Government argues that the district court's brief explanation of its "thought process" indirectly or implicitly considered the sentencing factors. But even if we assumed the Government's inferences, the court's statements evinced consideration of at most (1) the circumstances of Byrd's offense of conviction and his history and characteristics; (2) the need to reflect the seriousness of the offense, to provide just punishment for it, and perhaps to deter Byrd further from criminal conduct or to protect the public from him; and (3) the kinds of sentences available. *See* 18 U.S.C. § 3553(a). And its discussion of factors (1) and (2) focused nearly exclusively on Byrd's violation conduct rather than Byrd's offense of conviction, militating against the conclusion that the district court properly considered those factors. *See Johnson*, 640 F.3d at

203. The Government contends that the district court "implicitly considered" the relevant policy statement by briefly mentioning a topic discussed in the introductory commentary to that policy statement; but, as Byrd points out, the only way to know for sure that the district court actually considered the policy statement is for it to say so.[2]

When finding sentences procedurally reasonable, we regularly highlight the sentencing court's explicit discussion of multiple sentencing factors, readily apparent from the record. *See, e.g.*, *id.* at 207–08; *Bolds*, 511 F.3d at 582; *United States v. Donlow*, 807 F. App'x 424, 426–27 (6th Cir. 2020); *United States v. Kroffke*, 776 F. App'x 304, 308–09 (6th Cir. 2019). In *United States v. Whitely*, 356 F. App'x 839 (6th Cir. 2009), which the Government cites, we found a sentence imposed after revocation of supervised release procedurally reasonable chiefly because of the district court's consideration of the similarity between the offense conduct and the violation conduct, which the district court considered here. *Id.* at 845. But in *Whitely*, we emphasized the district court's discussion of other factors and stressed the key fact that the sentence was within the Guidelines range and thus already presumed reasonable. *Id.* That is a meaningfully different scenario than the one this case presents.

The clearest and simplest way to explain a sentencing decision is to discuss, at appropriate length, the application of each § 3553(a) factor to the facts of the case at hand. *Smith*, 505 F.3d at 468. Because the decision to revoke supervised release is complex and multifaceted, the process of arriving at that decision should be reasoned and sufficiently transparent for the defendant to understand and this court to evaluate. District courts have the discretion to explain their decisions

---

[2] We note that in an unpublished decision, we previously stated—without citation or analysis—that in general, "we can presume that the court considered the relevant policy statements for supervised-release violations" in the absence of explicit record evidence. *United States v. Jackson*, 541 F. App'x 668, 669 (6th Cir. 2013). Dictum in an unpublished decision has no binding authority. If the court indeed considered the relevant policy statements, as statutorily required, it should make that clear.

in a different way (i.e., without listing each factor), but that choice does not circumvent the core responsibility to put ample "evidence in the record demonstrating that [the factors] were thoroughly considered." *McBride*, 434 F.3d at 475 n.3. "[S]omething more than a simple and conclusory judicial assertion that the court has considered [the factors] is essential," *Ferguson*, 518 F. App'x at 467, as is a record that reflects consideration of any and all "particular[, nonfrivolous]" arguments for a lower sentence, *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (alteration in original) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)). Whatever the court relies upon as its justification, it must clearly articulate. That obligation is no less mandatory for being "modest." *Ferguson*, 518 F. App'x at 470.

A review of the hearing transcript and subsequent written order shows that the district court failed to offer this court sufficient explanation to enable meaningful appellate review. *See United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007). Nor was its explanation adequate "to promote the perception of fair sentencing." *Bolds*, 511 F.3d at 580 (quoting *Gall*, 552 U.S. at 50). The district court therefore abused its discretion by determining Byrd's sentence in a procedurally unreasonable manner.

### C.     Substantive Reasonableness

The district court was obligated to impose not only a procedurally reasonable sentence, but a substantively reasonable one as well. "Substantive unreasonableness is an argument about the length of the sentence." *United States v. Fievet*, 808 F. App'x 358, 364 (6th Cir. 2020). If the district court "'placed too much weight on some of the § 3553(a) factors and too little on others,' the sentence is substantively unreasonable regardless of whether the court checked every procedural box before imposing [the] sentence." *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)), *cert. denied,*

140 S. Ct. 2668 (2020). "The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

We have noted that weighing the § 3553(a) factors "is a matter of reasoned discretion, not math." *Id.* (citing *Gall*, 552 U.S. at 51). But even though our review is "highly deferential," *id.*, we again do not accord sentences outside the Guidelines range a presumption of reasonableness, *Herrera-Zuniga*, 571 F.3d at 582. District courts cannot just "pick any sentence within the applicable statutory sentencing range that strikes their fancy." *United States v. Warren*, 771 F. App'x 637, 642 (6th Cir. 2019) (quoting *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007)). In fact, the greater the "degree of variance from the [Guidelines] range," "the more compelling the justification based on the § 3553(a) factors must be." *Herrera-Zuniga*, 571 F.3d at 582 (quoting *United States v. McMannus*, 436 F.3d 871, 874 (8th Cir. 2006)); *see also Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").

Byrd contends that his sentence is substantively unreasonable because the district court did not consider the relevant § 3553(a) factors (effectively the same argument as his procedural unreasonableness claim), assigned excessive weight to the misdemeanor conviction, and imposed a sentence greater than necessary to comply with § 3553(a)'s purposes. The Government responds that the district court's isolated statement that it was not the "court's job . . . to enforce the wanton endangerment charge, the state charge" shows that the court acted consistently with the imperative to sanction Byrd's breach of trust (the new law violation while on supervised release) instead of the new law violation itself.

Again, a review of the record shows that the only factors the district court weighed in sentencing Byrd were its view of the conduct underlying his state misdemeanor conviction and its comparison, in light of that conduct, of Byrd to other people on supervised release. True, "provided the district court has examined all the § 3553(a) factors, it may place greater weight on a particular factor if such weight is warranted under the facts of the case." *United States v. Sims*, 800 F. App'x 383, 386 (6th Cir. 2020); *see also United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007) ("Not all [factors] are important in every sentencing; often one or two prevail, while others pale."). But the district court did the latter without the former here.

A threshold concern is that the district court's statements support the conclusion that it was effectively imposing a punishment for Byrd's violation conduct instead of sanctioning the breach of trust of the supervised release. Only the latter is permissible. *Johnson*, 640 F.3d at 203. When § 3553(a) speaks of "the nature and circumstances of the offense," it refers to the offense of conviction, rather than the violation conduct. *Id.*; *see also Johnson v. United States*, 529 U.S. 694, 701 (2000) (holding that "postrevocation penalties relate to the original offense"). "[C]onstruing revocation and reimprisonment as punishment for the violation of the conditions of supervised release" would raise "serious constitutional questions," including double jeopardy concerns. *Johnson*, 529 U.S. at 700–01. As we have noted, the Guidelines "confirm this view" by characterizing violations as "breach[es] of trust" as opposed to "punishment . . . for new criminal conduct." *Johnson*, 640 F.3d at 203; USSG Ch. 7, Pt. A, § 3(b), intro. comment. Adopting the latter approach "would have the revocation court substantially duplicate the sanctioning role of the court with jurisdiction over a defendant's new criminal conduct." USSG Ch. 7, Pt. A, § 3(b), intro. comment.

Here, the state court—the court with jurisdiction over Byrd's new criminal conduct—had convicted and sentenced Byrd. Byrd served time for that conduct. At Byrd's subsequent revocation hearing, the district court remarked upon that conduct at length, highlighting "the most outrageous behavior I've seen from any defendant that has been on federal supervision."

In *Johnson*, the court held that the district court had in fact "considered Johnson's violation conduct to be a very serious breach of the trust embodied by the original sentence." 640 F.3d at 204. The Government asserts that the same is true here. But in *Johnson*, the measure of the severity of the breach of trust was not only the nature of the defendant's violation conduct, or even offense conduct, but primarily the fact that the trust stemmed from the leniency of his original sentence. *Id.* Here, we are not presented with a situation in which the district court took into account a "lenient initial sentence for [the defendant's] initial conviction," which may support a finding of substantive reasonableness when the "relevant policy statement endorse[s] departing upward upon revocation in light of the downward departure applied to his original sentence." *Id.* at 209; *see* USSG § 7B1.4, p.s., comment. (n.4). Instead, Byrd was originally sentenced to the low end of his Guidelines range. *Byrd*, 689 F.3d at 639.

Even assuming the district court was sanctioning the breach of trust rather than the violation conduct, the question of whether it improperly weighed the § 3553(a) factors remains. Our recent decision in *Warren*, 771 F. App'x at 637, is instructive on this issue. There, the district court imposed the statutory maximum sentence, "roughly *doubling*" the high end of the Guidelines range. *Id.* at 643. "[T]he district court engaged in a thorough discussion" of multiple § 3553(a) factors and noted the large disparity the statutory maximum produced, but "the only reason the court gave for that disparity was [the defendant's] criminal record." *Id.* at 641. We held that "because the Guidelines already account for a defendant's criminal history, imposing an extreme

variance based on that same criminal history is inconsistent with 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" rendering the sentence substantively unreasonable. *Id.* at 642 (quoting 18 U.S.C. § 3553(a)(6)) (citing *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012); *United States v. Borho*, 485 F.3d 904, 912–13 (6th Cir. 2007)); *see also Boucher*, 937 F.3d at 708 (citing *Warren*, 771 F. App'x at 641). When we have distinguished *Warren*, we have pointed to fuller explanations and smaller variances to justify substantive reasonableness findings. *See Sims*, 800 F. App'x at 386–87; *United States v. McBee*, 812 F. App'x 318, 323 (6th Cir. 2020). The differences we have previously found salient emphasize the similarity of this case to *Warren*, counseling a similar outcome.

Indeed, Byrd's case presents nearly the same problem as Warren's, substituting seriousness of the offense[3] (or severity of breach of trust) for criminal history. In both cases, the district court imposed the statutory maximum over Guidelines that already took seriousness of the offense and criminal history into account. *See* USSG § 7B1.4(a), p.s. (incorporating grade of supervised release violation and criminal history into imprisonment ranges). In both cases, the district court approximately doubled the high end of the Guidelines range, requiring especially compelling reasoning. And in both cases, the district court conflated another sentencing factor—in *Warren*, criminal history; here, seriousness of the offense—with the need to avoid disparities, pointing to the former as justifying the disparity. In *Warren*, these facts made the sentence substantively unreasonable absent highly compelling justification; so too, here.

---

[3] Byrd and the Government dispute the extent to which the district court could permissibly rely on its view of the conduct underlying Byrd's misdemeanor conviction, drawing on Mousty's testimony. The Government has the better of this argument: "'revocation hearings are more flexible' than criminal trials," and district courts may consider both "reasonably reliable" hearsay and acquitted conduct. *United States v. Thompson*, 314 F. App'x 797, 799 (6th Cir. 2008) (quoting *United States v. Stephenson*, 928 F.3d 728, 732 (6th Cir. 1991)). Byrd also does not clearly dispute the version of events the district court described.

In the Government's telling, though, this calculus is valid. It refers to *United States v. Flores*, 506 F. App'x 468, 470 (6th Cir. 2012) (per curiam), for the proposition that the seriousness of a new law violation alone can justify an upward variance. This is true: it can serve as the "specific reason" needed to vary upwards. *Johnson*, 640 F.3d at 205–206; *see also* 18 U.S.C. § 3553(c)(2); *Gall*, 552 U.S. at 50. But this is just part of the substantive reasonableness obligation; the district court also must reasonably consider and weigh the appropriate § 3553(a) factors. Compliance with one does not excuse failure to carry out the other. To the extent that *Flores*—which dealt with the defendant's substantive reasonableness arguments in just a few sentences—might be read to absolve the district court of this responsibility to consider and weigh the appropriate § 3553(a) factors, our published cases have held otherwise. *See, e.g.*, *Boucher*, 937 F.3d at 707–09.

The Government also cites *United States v. Kirby*, 418 F.3d 621 (6th Cir. 2005), to argue that similarity between conviction offense conduct and violation conduct can support the imposition of a statutory maximum sentence. However, *Kirby* is meaningfully different from this case—sufficiently different to provide support for a finding of substantive unreasonableness here. Kirby, who had been convicted of possession and theft of mail matter, twice violated her supervised release conditions by stealing money and merchandise. *Id.* at 623, 628. The district court revoked her supervised release as a result. *Id.* at 628. After her release from custody, she was placed on supervised release again and began passing stolen checks, and the district court imposed the statutory maximum sentence. *Id.* We held that "Kirby's case presents the classic situation in which imposition of the statutory maximum sentence upon revocation of supervised release is appropriate" because "she continued to engage in criminal activities similar to the crime for which she was originally convicted" and because of her "repeated transgressions." *Id.* Thus,

the holding of *Kirby*, and cases similar to it, *see, e.g.*, *United States v. Wells*, 443 F. App'x 997, 998–99 (6th Cir. 2011), is not that similarity between conviction and violation conduct *alone* necessarily justifies a statutory maximum sentence. Byrd, in contrast to those defendants, had not previously violated the conditions of his supervised release. And unlike Kirby, "who concede[d] that the district court considered the relevant statutory factors," Byrd maintains that the district court did not carry out this necessary first step. *Kirby*, 418 F.3d at 628. *Kirby*, while binding authority, is therefore inapplicable here.

Though we agree with the district court that Byrd broke the law, his sentence was substantively unreasonable. Without considering the relevant § 3553 factors, the district court assigned excessive weight to Byrd's misdemeanor convictions and imposed an unreasonably long sentence. "On the record before us, the district court failed to provide a sufficiently compelling justification to impose the greatest possible upward variance under the statute." *Warren*, 771 F. App'x at 643 (citing *Gall*, 552 U.S. at 50, *United States v. Stall*, 581 F.3d 276, 281–82 (6th Cir. 2009)).

## III. CONCLUSION

For the reasons discussed above, we **VACATE** the district court's order revoking Byrd's supervised release and **REMAND** with instructions to resentence in a procedurally and substantively reasonable manner as detailed above, including providing sufficient explanation to enable meaningful appellate review.

**HELENE N. WHITE, Circuit Judge, concurring in the judgment.**  Although I do not join in every criticism voiced by the majority, I agree that we must remand for a resentencing that provides "sufficient explanation enabling appellate review."